**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

|  |  |  |
|---|---|---|
| **EVERY PENNY COUNTS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 8:11-cv-02826-SDM-TBM** |
| | ) | |
| **WELLS FARGO BANK, N.A.,** | ) | |
| **f/k/a Wachovia Bank, N.A.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**WELLS FARGO BANK'S ANSWER TO EPC'S AMENDED COMPLAINT FOR
PATENT INFRINGEMENT AND JURY DEMAND**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), through its counsel, responds to the

Amended Complaint for Patent Infringement and Jury Demand ("Amended Complaint") filed by

Every Penny Counts, Inc. ("Plaintiff" or "EPC") as follows:

**GENERAL DENIAL**

Unless specifically admitted below, Wells Fargo denies each and every allegation in

Plaintiff's Amended Complaint.

**RESPONSES TO SPECIFIC ALLEGATIONS**

Wells Fargo responds to the numbered paragraphs of Plaintiff's Amended Complaint

with the following like-numbered responses.

**NATURE OF THE ACTION**

1.      Wells Fargo admits that Plaintiff's Amended Complaint alleges infringement

under the United States patent laws.  To the extent paragraph 1 contains any other or different

allegations, Wells Fargo denies them.

2.      Wells Fargo admits that U.S. Patent No. 7,571,849 ("the '849 Patent") and U.S. Patent No. 8,025,217 ("the '217 Patent") are attached to Plaintiff's Amended Complaint as Exhibits A and B respectively and that both are entitled "Method and System to Create and Distribute Excess Funds from Consumer Spending Transactions."   Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the allegation that the '849 and '217 Patents are assigned to Plaintiff, and therefore denies it.   Wells Fargo denies the remaining allegations in paragraph 2.[1]

## JURISDICTION

3.      These allegations set forth legal conclusions to which no response is required. Wells Fargo admits that Plaintiff's Amended Complaint alleges infringement under the United States patent laws.   Wells Fargo admits that this Court has subject matter jurisdiction over patent law claims.   Wells Fargo denies the remaining allegations in paragraph 3.

## PERSONAL JURISDICTION AND VENUE

4.      Wells Fargo admits that it is subject to personal jurisdiction in this judicial district for this particular case.   Wells Fargo denies the remaining allegations in paragraph 4 and expressly denies that Wells Fargo has committed any wrongdoing or infringement.

5.      Denied.

6.      Wells Fargo admits that it is subject to personal jurisdiction in this judicial district for this particular case.   Wells Fargo denies the remaining allegations in paragraph 6.

---

[1]   To the extent paragraph 2 includes an allegation that Wells Fargo "actively induce[s] others to infringe" the '849 and '217 Patents, Plaintiff has since withdrawn such allegation of indirect infringement in response to Wells Fargo's Motion to Dismiss the Amended Complaint.   Dkt. No. 19 at 3 n.1 ("EPC has withdrawn it [sic] theories of indirect infringement in the Amended Complaint… EPC is not presently advancing any theory other than direct infringement.").   Accordingly no response is required.

7.     Wells Fargo admits that it has offered Way2Save® and Save As You Go® to its customers, including customers in this District.   Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7 and therefore denies them.

8.     Wells Fargo admits that venue is proper in this judicial district for purposes of this particular action.  Wells Fargo denies the remaining allegations in paragraph 8.

9.     Wells Fargo admits that Bertram V. Burke is the named inventor on the faces of the '849 and '217 Patents.  Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9 and therefore denies them.

## FACTUAL BACKGROUND

10.     Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 and therefore denies them.

11.     Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore denies them.

12.     To the extent the allegations of paragraph 12 are directed at "others," Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.  To the extent the allegations of paragraph 12 are directed at Wells Fargo, Wells Fargo denies them.[2]

13.     Wells Fargo admits that it has offered Way2Save® and Save As You Go® to its customers.  Wells Fargo is without knowledge or information sufficient to form a belief as to the

---

[2]   To the extent paragraph 12 includes an allegation that Wells Fargo "induce[s] others" to infringe the '849 and '217 Patents, Plaintiff has since withdrawn such allegation of indirect infringement in response to Wells Fargo's Motion to Dismiss the Amended Complaint.  Dkt. No. 19 at 3 n.1 ("EPC has withdrawn it [sic] theories of indirect infringement in the Amended Complaint… EPC is not presently advancing any theory other than direct infringement.").  Accordingly no response is required.

truth of the remaining allegations in paragraph 13 and therefore denies them.

## STANDING

14.     Wells Fargo admits that the face of the '849 Patent states that it was issued on August 11, 2009.  Wells Fargo denies the remaining allegations in paragraph 14.

15.     Wells Fargo admits that the face of the '217 Patent states that it was issued on September 27, 2011.  Wells Fargo denies the remaining allegations in paragraph 15.

16.     Wells Fargo is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 and therefore denies them.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,571,849 BY WELLS FARGO

17.     Wells Fargo refers to and incorporates herein its responses to Plaintiff's allegations at paragraphs 1 through 16 above.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Denied.

26.     Denied.

27.     Denied.

## PRAYER FOR RELIEF FOR COUNT I

28.     Wells Fargo denies that Plaintiff is entitled to any relief, including any of the

relief requested in paragraph 28 (A)-(G).

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,025,217 BY WELLS FARGO

29.     Wells Fargo refers to and incorporates herein its responses to Plaintiff's allegations at paragraphs 1 through 16 above.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

### PRAYER FOR RELIEF FOR COUNT II

40.     Wells Fargo denies that Plaintiff is entitled to any relief, including any of the relief requested in paragraph 40(A)-(G).

### DEMAND FOR JURY TRIAL

Wells Fargo requests a trial by jury of any issues so triable, including Wells Fargo's affirmative defenses and counterclaims.

### AFFIRMATIVE DEFENSES

Wells Fargo alleges and asserts the following affirmative defenses in response to EPC's Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

## FACTUAL BACKGROUND

### *EPC's Parent Patent (U.S. Patent No. 6,112,191)*

1.     The '849 Patent and '217 Patent each are related to U.S. Patent No. 6,112,191 ("EPC's Parent Patent").   The '849 Patent is listed as a "[d]ivision of application No. 09/611,905, filed on Jul. 7, 2000, which is a continuation of application No. 08/429,758, filed on Apr. 27, 1995, now Pat. No. 6,112,191."   The '217 Patent is listed as a "[c]ontinuation of application No. 11/421,113, filed on May 31, 2006, now Pat. No. 7,571,849."

### *EPC Asserts EPC's Parent Patent Against Bank of America et al.*

2.     On January 25, 2007, EPC filed a lawsuit against Bank of America Corporation ("BOA") and Visa U.S.A., Inc. ("Visa") alleging infringement of EPC's Parent Patent in a case entitled *Every Penny Counts, Inc. v. Bank of America Corp. et al.*, Case No. 2:07-cv-00042-JES-SPC (M.D. Florida) ("the BOA Action").

3.     On April 19, 2007, EPC filed a notice of voluntary dismissal as to Visa in the BOA Action, and the case proceeded as to BOA.

4.     BOA asserted several defenses against EPC's infringement claims, including that EPC's Parent Patent was invalid as anticipated by and/or obvious over prior art, including but not limited to U.S. Patent No. 4,750,119 ("the Cohen Patent") and U.S. Patent No. 5,287,268 ("the McCarthy Patent").

5.     On December 19, 2007, BOA amended its answer and counterclaims to allege that EPC's Parent Patent was unenforceable for inequitable conduct before the Patent Office for failure to disclose the Cohen or McCarthy Patents to the Patent Office during prosecution.

6.     On October 14, 2008, BOA moved for summary judgment of noninfringement and unenforceability based on EPC's inequitable conduct before the Patent Office in prosecuting

EPC's Parent Patent.

### *The Middle District Of Florida Rules That EPC's Parent Patent Is Invalid Under 35 U.S.C. § 101*

7.     On October 30, 2008, after BOA moved for summary judgment, the United States Court of Appeals for the Federal Circuit issued its *en banc* decision in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) ("the *Bilski* decision").  BOA then asked the Court to postpone the hearing on the pending summary judgment motion and reopen discovery for the purpose of allowing the parties to examine the effect of the *Bilski* decision.  The Court allowed the additional discovery and permitted the parties to file addenda to their previously filed summary judgment papers.

8.     On March 15, 2009, BOA filed an addendum to its initial summary judgment motion arguing that EPC's alleged invention is unpatentable under 35 U.S.C. § 101.

9.     On May 27, 2009, the Court in the BOA Action granted BOA's summary judgment motion, ruling that EPC's Parent Patent is invalid for lack of patentable subject matter.

10.    On February 8, 2011, EPC and BOA jointly moved to vacate the judgment of invalidity as to EPC's Parent Patent in light of a subsequent settlement, and on August 8, 2011, the Court granted that motion.

### *EPC Asserts U.S. Patent No. 7,571,849 And U.S. Patent No. 8,025,217 Against Wells Fargo Knowing Them To Be Invalid, Unenforceable, And Not Infringed*

11.    On information and belief, EPC filed the instant lawsuit against Wells Fargo in bad faith, alleging infringement of the '849 and '217 Patents.

12.    As was the case with EPC's Parent Patent, the '849 and '217 Patents are invalid for, *inter alia*, lack of patentable subject matter under 35 U.S.C. § 101, and on information and belief, EPC knows or should know this to be true.

13.    The '849 and '217 Patents are also invalid for failure to meet the conditions of

patentability and/or otherwise comply with the patent laws, including but not limited to 35 U.S.C. §§ 102, 103 and 112 and on information and belief, EPC knows or should know this to be true.

14.    Neither of the '849 or '217 Patents has been infringed by Wells Fargo, and on information and belief, EPC knows or should know this to be true.

## FIRST AFFIRMATIVE DEFENSE: NONINFRINGEMENT OF U.S. PATENT NO. 7,571,849

15.    Wells Fargo has not infringed any claim of the '849 Patent, either literally, or under the doctrine of equivalents.

## SECOND AFFIRMATIVE DEFENSE: INVALIDITY OF U.S. PATENT NO. 7,571,849

16.    The '849 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with the patent laws, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112.

## THIRD AFFIRMATIVE DEFENSE:  UNENFORCEABILITY OF U.S. PATENT NO. 7,571,849 DUE TO INEQUITABLE CONDUCT DURING PROSECUTION OF EPC'S PARENT PATENT (U.S. PATENT NO. 6,112,191)

17.    Wells Fargo restates and incorporates by reference its allegations in paragraphs 1-14 of its Affirmative Defenses.

18.    The EPC Parent Patent issued on August 29, 2000.

19.    The EPC Parent Patent is entitled "Method and System to Create and Distribute Excess Funds from Consumer Spending Transactions."

20.    Bertram V. Burke is identified as the inventor on the face of the EPC Parent Patent.

21.    Bertram V. Burke is the co-founder of EPC.

22.    EPC purports to be the assignee of the EPC Parent Patent.

23.    On information and belief, Mr. Burke is and has been involved in the prosecution of EPC patents, including the EPC Parent Patent.

24.    In connection with the application for the EPC Parent Patent, Mr. Burke signed a declaration in which he acknowledged his duty to disclose to the Patent Office information known to him to be material to patentability in accordance with 37 C.F.R. § 1.56.

25.    On information and belief, during prosecution of the application for the EPC Parent Patent, Mr. Burke was aware of the duty of candor and good faith in dealing with the Patent Office imposed on him by 37 C.F.R. § 1.56.

26.    On information and belief, during prosecution of the application for the EPC Parent Patent, Mr. Burke was aware of the requirements of 37 C.F.R. § 1.56 to disclose to the Patent Office information known to him to be material to patentability of the EPC Parent Patent.

**Cohen Patent**

27.    On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose during prosecution of the EPC Parent Patent U.S. Patent No. 4,750,119 ("the Cohen Patent").

28.    Based on Mr. Burke's failure to disclose the Cohen Patent during prosecution of the EPC Parent Patent, the EPC Parent Patent is unenforceable due to inequitable conduct. Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009):

(a)  "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

On information and belief, Mr. Burke knew of the Cohen Patent.  On information and

belief, Mr. Burke deliberately withheld the existence of the Cohen Patent during prosecution of

the EPC Parent Patent.

    (b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

The Cohen Patent is relevant to at least claim 15 of the EPC Parent Patent.  The Cohen

Patent discloses or renders obvious each limitation of claim 15, including:

15. A system, comprising:

a network;

entry means coupled to said network for entering into the network an amount being paid in a transaction by a payor;

identification entering means in said entry means and coupled to said network for entering an identification of the payor;

said network including computing means having data concerning the payor including an excess determinant established by the payor for the accounts;

said computing means in said network being responsive to said data and said identification entering means for determining an excess payment to the basis of the determinant established by the payor, and

said computing means in said network being responsive to the excess payment for apportioning at least a part of the excess payment among said accounts on the basis of the excess determined and established by the payor and on the basis of commands established by the payor and controlled by other than the payee.

    (c) "**Where** in th[e] references the material information is found" (*id.*)

The material information can be found throughout the Cohen Patent including but not

limited to the Cohen Patent at Abstract ("The purchasing system with a rebate feature…

computes and reports a rebate which is due in the future to each subscriber-purchaser… The

rebate is based upon cost of the individually selected goods and services and the rebate

factor…"); 3:1-3 (describing network arrangement); 6:34-35 (same); 8:11-13 (same); 3:39-62

("The consumer or subscriber-purchaser, places an order for a selected good or service from a

particular vendor… [T]hat order may be placed over the telephone to an individual at a purchasing center…"); Tables I, III (describing identification information); Fig. 4 (same); 3:13-15 ("The use of the term 'subscriber' is based on the concept that the individual subscribes to this transactional system of trading or maketing [sic] goods and services."); 1:22-27 ("[T]he present invention… allows subscriber-purchasers to buy goods and services and obtain future guaranteed rebates based upon the cost of that purchase."); 4:63-5:2 ("This transactional system motivates the subscriber-purchasers to return to the purchasing center…"); Claim 1 ("means, coupled to the correlation means and the factor input means, for computing and reporting a rebate, due in the future, to each individual subscriber-purchaser at a predetermined future date from said future benefit guarantor to each said subscriber-purchaser based upon the cost of the individually selected good and service and said rebate factor."); 4:36-62 ("At the end of each accounting quarter, the system generates a quarterly report for each subscriber-purchaser showing the total individual purchases made during the quarter and an estimated rebate..."); 2:35-43 ("This computer program also includes means for inputting an updated rebate factor at the end of the fiscal year…"); Figures 1a-b, 2-4; and Claims 2-4.

(d) **"'Why'** the withheld information is material and not cumulative" (*id*.) or why the misrepresented information is material

The Cohen Patent is material and not cumulative because but for the failure to disclose the Cohen Patent to the Examiner, the Examiner would not have allowed one or more claims of the EPC Parent Patent including at least claim 15.  *See Therasense v. Becton, Dickson, and Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

(e) **"'How'** an examiner would have used [the] information in assessing the patentability

of the claims (*Exergen*, 575 F.3d at 1329-1330).

On information and belief, had the Examiner known about the Cohen Patent, the Examiner would have used such information to find one or more claims of the EPC Parent Patent anticipated and/or rendered obvious by the Cohen Patent under 35 U.S.C. §§ 102 and/or 103.

(f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission of the Cohen Patent committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date Mr. Burke was first aware of the Cohen Patent and its materiality (on information and belief, at least as early as 1997) and continuing until the EPC Parent Patent issued on August 29, 2000.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

On information and belief, Mr. Burke knew of the Cohen Patent and its materiality to the EPC Parent Patent.

(h) "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO.  Mr. Burke's specific intent to deceive the PTO when failing to disclose the Cohen Patent during prosecution of the EPC Parent Patent is supported by, among other things, 1) the fact that Mr. Burke knew about the Cohen Patent and its materiality; and 2) that, on information and belief, Mr. Burke wanted the application for the EPC Parent Patent to issue as a patent in order to, *inter alia*, enforce it against others and seek licensing fees therefor.

29.     Mr. Leo Stanger was the prosecuting attorney who prosecuted the application resulting in the EPC Parent Patent and is identified on the face of the EPC Parent Patent.

30.     On information and belief, Mr. Stanger has been involved in the prosecution of

EPC patents, including the EPC Parent Patent.

31.     In connection with the application for the EPC Parent Patent, Mr. Burke signed a declaration in which he acknowledged his duty to disclose to the Patent Office information known to him to be material to patentability in accordance with 37 C.F.R. § 1.56.

32.     On information and belief, during prosecution of the application for the EPC Parent Patent, Mr. Stanger was aware of the duty of candor and good faith in dealing with the Patent Office imposed on him by 37 C.F.R. § 1.56.

33.     On information and belief, during prosecution of the application for the EPC Parent Patent, Mr. Stanger was aware of the requirements of 37 C.F.R. § 1.56 to disclose to the Patent Office information known to him to be material to patentability of the EPC Parent Patent.

### McCarthy Patent

34.     On information and belief, Mr. Stanger, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose during prosecution of the EPC Parent Patent U.S. Pat. No. 5,287,268 ("the McCarthy Patent").

35.     Based on Mr. Stanger's failure to disclose the McCarthy Patent during prosecution of the EPC Parent Patent, the EPC Parent Patent is unenforceable due to inequitable conduct.  Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen*., 575 F.3d 1312:

(a)  "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

On information and belief, Mr. Stanger knew of the McCarthy Patent.  On information and belief, Mr. Stanger deliberately withheld the existence of the McCarthy Patent during prosecution of the EPC Parent Patent.

(b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

The McCarthy Patent is relevant to at least claims 15 and 28 of the EPC Parent Patent.

The McCarthy Patent discloses or renders obvious each limitation of claim 15, including:

15. A system, comprising:

a network;

entry means coupled to said network for entering into the network an amount being paid in a transaction by a payor;

identification entering means in said entry means and coupled to said network for entering an identification of the payor;

said network including computing means having data concerning the payor including an excess determinant established by the payor for the accounts;

said computing means in said network being responsive to said data and said identification entering means for determining an excess payment to the basis of the determinant established by the payor, and

said computing means in said network being responsive to the excess payment for apportioning at least a part of the excess payment among said accounts on the basis of the excess determined and established by the payor and on the basis of commands established by the payor and controlled by other than the payee.

The McCarthy Patent discloses or renders obvious each limitation of claim 28, including:

28. A point of sale operating method, comprising:

entering an amount corresponding to a price of a product into a cash register;

entering an amount corresponding to cash being paid;

determining any excess payment;

entering a card number;

transmitting data of the excess payment to a separate station and in said separate station apportioning at least a part of the amounts of excess cash payment to one or more predetermined accounts selected on the basis of the card number and controlled by other than the payee;

crediting the excess paid to the selected accounts to the card number.

(c)  "**Where** in th[e] references the material information is found" (*id.*)

The material information can be found throughout the McCarthy Patent including but not limited to the McCarthy Patent at Title ("Centralized Consumer Cash Value Accumulation System for Multiple Merchants"); Abstract ("A centralized system of accumulating cash value for consumers based upon point-of-sale transactions with multiple merchants is disclosed wherein for each transaction, the consumer's account number…   is transmitted to a central system along with data identifying the merchant and a credit value for the transaction.  The credit value may be based upon predetermined incentives associated with the transaction such as coupons, rebates or discounts, and/or upon a credit rate determined by the merchant applied to the amount of the transaction. At the central location, a cash value for that consumer is incremented by the credit value and a bill value for that merchant is similarly incremented… [A]t selected intervals, consumers are given access to their respective accumulated cash values… "); 4:11-13 (describing network arrangement); 2:65-3:3 ("Each merchant location 14 includes at least one computer unit 16 such as a microprocessor and associated peripherals which communicates… with a consumer data input device 20, a transaction data input device 22, a memory 24 and an input/output (I/O) device 26."); 3:15-33 ("Where a plastic card is used, device 20 may also include a keyboard for entry of a personal identification number (PIN)…"); 2:4-16 (describing identification information); 5:34-40 (same); 4:18-24 (same); 3:45-58 ("Computer 16 will also preferably determine a credit value for the transaction based upon the transaction data input and the credit rate (e.g., purchase of $25.00 and credit rate of 0.10=$2.50 credit value) and will output to the central system 12, through I/O device 26 and communication line 30, the consumer's account number and birthdate if utilized, the credit value for that transaction and the

merchant data."); 4:37-39 ("The data received at I/O device 40 is sorted out by computer 54 under control of an operation program stored in memory 48."); 4:45-54 ("Once the proper account is found, the cash value segment is incremented in relation to the amount of the credit value data received from the merchant for that transaction… The bill value segment is then similarly incremented in relation to the amount of the credit value data received from that merchant."); Figure; Claims 1, 5-6, 8, and 12.

(d) **"'Why'** the withheld information is material and not cumulative" (*id.*) or why the misrepresented information is material

The McCarthy Patent is material and not cumulative because but for the failure to disclose the McCarthy Patent to the Examiner, the Examiner would not have allowed one or more claims of the EPC Parent Patent including at least claims 15 and 28. *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

(e) **"'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330)

On information and belief, had the Examiner known about the McCarthy Patent, the Examiner would have used such information to find one or more claims of the EPC Parent Patent anticipated and/or rendered obvious by the McCarthy Patent under 35 U.S.C. §§ 102 and/or 103.

(f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id.* at 1327)

The omission of the McCarthy Patent committed before the PTO by Mr. Stanger occurred during the entirety of the period beginning on the date Mr. Stanger was first aware of the McCarthy Patent and its materiality (on information and belief, at least as early as September 1996) and continuing until the EPC Parent Patent issued on August 29, 2000.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id.* at 1328)

On information and belief, Mr. Stanger knew of the McCarthy Patent and its materiality to the EPC Parent Patent.  Mr. Stanger filed, on Mr. Burke's behalf, an international patent application pursuant to the Patent Cooperation Treaty (WO 96/34358 or "PCT application") that claimed priority to the application for the EPC Parent Patent, Appl. No. 08/429,758 ("the '758 application"). Accordingly, the PCT application included almost identical copies of the claims that ultimately issued from the '758 application. The International Search Authority handling Mr. Burke's PCT application issued an International Search Report that cited the McCarthy Patent. The International Search Authority cited the McCarthy Patent as a "document[] of particular relevance" to claims 15-45 of the PCT application, at least some of which were virtually identical to the pending claims in the '758 application.

(h) "Specific **intent** to deceive the PTO" (*id.* at 1327).

On information and belief, Mr. Stanger acted with specific intent to deceive the PTO. Mr. Stanger's specific intent to deceive the PTO when failing to disclose the McCarthy Patent during prosecution of the EPC Parent Patent is supported by, among other things, 1) the fact that Mr. Stanger knew about the McCarthy Patent and its materiality; and 2) that, on information and belief, Mr. Stanger wanted the application for the EPC Parent Patent to issue as a patent because he had an interest in EPC and obtaining patents for EPC.

36.     The '849 Patent, which claims priority to and to be a continuation of the EPC Parent Patent, is unenforceable as a result of the inequitable conduct that occurred during prosecution of the EPC Parent Patent.

**FOURTH AFFIRMATIVE DEFENSE: UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT DURING PROSECUTION OF U.S. PATENT NO. 7,571,849**

37.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 1-14 of its Affirmative Defenses.

38.     The '849 Patent issued on August 11, 2009.

39.     The '849 Patent is entitled "Method and System to Create and Distribute Excess Funds from Consumer Spending Transactions."

40.     Bertram V. Burke is identified as the inventor on the face of the '849 Patent.

41.     Bertram V. Burke is the co-founder of EPC.

42.     EPC purports to be the assignee of the '849 Patent.

43.     On information and belief, Mr. Burke is and has been involved in the prosecution of EPC patents, including the '849 Patent.

44.     In connection with the application for the '849 Patent, Mr. Burke signed a declaration in which he acknowledged his duty to disclose to the Patent Office information known to him to be material to patentability in accordance with 37 C.F.R. § 1.56.

45.     On information and belief, during prosecution of the application for the '849 Patent, Mr. Burke was aware of the duty of candor and good faith in dealing with the Patent Office imposed on him by 37 C.F.R. § 1.56.

46.     On information and belief, during prosecution of the application for the '849 Patent, Mr. Burke was aware of the requirements of 37 C.F.R. § 1.56 to disclose to the Patent Office information known to him to be material to patentability of the '849 Patent.

**BOA Action**

47.     On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to

disclose during prosecution of the '849 Patent the BOA Action, including but not limited to BOA's contentions in the BOA Action that the EPC Parent Patent was invalid and unenforceable; the Court's May 27, 2009 Order that the EPC Parent Patent was invalid; or the prior art that was the subject of BOA's invalidity and unenforceability claims, including the Cohen Patent.

48.     Based on Mr. Burke's failure to disclose the BOA Action during prosecution of the '849 Patent, the '849 Patent is unenforceable due to inequitable conduct.  Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen*, 575 F.3d 1312:

(a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

Mr. Burke knew of the BOA Action, including through his position at EPC and participation in the BOA Action.  On information and belief, Mr. Burke deliberately withheld the existence of the BOA Action during prosecution of the '849 Patent.

(b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

MPEP § 2001.06(c) states that "[w]here the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office."  Accordingly, because EPC's Parent Patent was at issue in the BOA Action and because the EPC Parent Patent and the '849 Patent are related and involve the same subject matter, the BOA Action is relevant to all claims, and all limitations in those claims, of the '849 Patent.

(c) "**Where** in th[e] references the material information is found" (*id.*)

Per MPEP § 2001.06(c), the entirety of the BOA Action is material.  In addition, specific

examples of material information from the BOA Action include, without limitation:

- The Court's May 27, 2009 ruling that EPC's Parent Patent is invalid for lack of patentable subject matter.

- Prior Art disclosed during the BOA action and Bank of America's allegations of invalidity of EPC's Parent Patent, including but not limited to the Cohen Patent and the McCarthy Patent, both of which were the subject of Bank of America's motion for summary judgment of unenforceability.

- Bank of America's allegations of unenforceability of EPC's Parent Patent based on EPC's inequitable conduct before the Patent Office in prosecuting EPC's Parent Patent.

(d) **"'Why'** the withheld information is material and not cumulative" (*id*.) or why the misrepresented information is material

Per MPEP § 2001.06(c), the entirety of the BOA Action is material.  But for Mr. Burke's failure to disclose the BOA Action to the Examiner, the Examiner would not have allowed one or more claims of the '849 Patent.  *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

(e) **"'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

On information and belief, had the Examiner known about the BOA Action, the Examiner would have used such information to find one or more claims of the '849 Patent unpatentable, anticipated by prior art disclosed during the BOA Action, and/or rendered obvious by prior art disclosed during the BOA Action.

(f) The **"when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission of the BOA Action committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date the BOA Action was initiated and continuing until the '849 Patent issued: January 25, 2007 through August 11, 2009.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

Mr. Burke knew of the BOA Action including through his position at EPC and his involvement in the BOA Action.

(h) "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO. Mr. Burke's specific intent to deceive the PTO when failing to disclose material information during prosecution of the '849 Patent is supported by, among other things, 1) the fact that Mr. Burke knew about the BOA Action; 2) that as of May 27, 2009, before the '849 Patent issued, the Court in the BOA Action found EPC's Parent Patent invalid for lack of patentable subject matter; and 3) that, on information and belief, Mr. Burke wanted the application for the '849 Patent, which is related to EPC's Parent Patent, to issue as a patent in order to, *inter alia*, enforce it against others and seek licensing fees therefor.

**Cohen Patent**

49.     On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose during prosecution of the '849 Patent U.S. Patent No. 4,750,119 ("the Cohen Patent").

50.     Based on Mr. Burke's failure to disclose the Cohen Patent during prosecution of the '849 Patent, the '849 Patent is unenforceable due to inequitable conduct. Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen*, 575 F.3d 1312:

(a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

On information and belief, Mr. Burke knew of Cohen Patent. On information and belief,

Mr. Burke deliberately withheld the existence of the Cohen Patent during prosecution of the '849

Patent.

> (b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

The Cohen Patent is relevant to at least claim 1 of the '849 Patent.  The Cohen Patent

discloses or renders obvious each limitation of claim 1, including:

> 1. A method for performing a payment transaction, the method comprising:
>
> electronically receiving, in connection with the payment transaction, a determinant, apportioning data, payment transaction data comprising a transaction amount, and operating account identifying data that identifies an operating account;
>
> generating a rounder amount based on the transaction amount and the determinant, wherein generating a rounder amount is performed after receiving a plurality of payment transactions;
> modifying a balance of the operating account based on the transaction amount and the rounder amount;
>
> apportioning at least a portion of the rounder amount to one or more other accounts selected by a holder of the operating account; and
>
> depositing the apportioned parts of the rounder amount to the one or more other accounts.

> (c) "**Where** in th[e] references the material information is found" (*id.*)

The material information can be found throughout the Cohen Patent including but not

limited to the Cohen Patent at Abstract ("The purchasing system with a rebate feature…

computes and reports a rebate which is due in the future to each subscriber-purchaser… The

rebate is based upon cost of the individually selected goods and services and the rebate

factor…"); Tables I, III (describing data associated with transaction); 5:10-19 (describing Table

I); 5:64-68 (describing Table III); Fig. 4 (describing data associated with transaction); 6:14-24

(describing Fig. 4); 2:35-43 ("This computer program also includes means for inputting an

updated rebate factor at the end of the fiscal year…"); 7:20-32 ("[A]n updated rebate factor is

input into the purchasing system…  [T]he program can compute the individual annuity contract rebate values for each subscriber-purchaser based upon that purchaser's total purchases versus all the purchases made through the transactional system (i.e., the percentage of individual to the total goods and services bought by all purchasers."); 3:13-15 ("The use of the term 'subscriber' is based on the concept that the individual subscribes to this transactional system of trading or maketing [sic] goods and services."); 1:22-27 ("[T]he present invention… allows subscriber-purchasers to buy goods and services and obtain future guaranteed rebates based upon the cost of that purchase."); 4:63-5:2 ("This transactional system motivates the subscriber-purchasers to return to the purchasing center…"); Claim 1 ("means, coupled to the correlation means and the factor input means, for computing and reporting a rebate, due in the future, to each individual subscriber-purchaser at a predetermined future date from said future benefit guarantor to each said subscriber-purchaser based upon the cost of the individually selected good and service and said rebate factor."); 4:36-62 ("At the end of each accounting quarter, the system generates a quarterly report for each subscriber-purchaser showing the total individual purchases made during the quarter and an estimated rebate..."); Abstract ("[T]he system further instructs the guarantor to issue individual future guaranteed rebate contracts to each purchaser-subscriber based upon the total rebates or total purchases over the accounting period."); Figures 1a-b, 2-4; and Claims 2-4.

(d)  **"'Why'** the withheld information is material and not cumulative" (*id.*) or why the misrepresented information is material

The Cohen Patent is material and not cumulative because but for the failure to disclose the Cohen Patent to the Examiner, the Examiner would not have allowed one or more claims of the '849 Patent including at least claim 1.  *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would

not have allowed a claim had it been aware of the undisclosed prior art.").

    (e) "**'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

On information and belief, had the Examiner known about the Cohen Patent, the Examiner would have used such information to find one or more claims of the '849 Patent anticipated and/or rendered obvious by the Cohen Patent under 35 U.S.C. §§ 102 and/or 103.

    (f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission of the Cohen Patent committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date the application resulting in the '849 Patent was filed until the '849 Patent issued:  May 31, 2006 - August 11, 2009.

    (g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

On information and belief, Mr. Burke knew of the Cohen Patent and its materiality to the '849 Parent Patent at least through his role in EPC and involvement in the BOA Action and other means.

    (h) "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO.  Mr. Burke's specific intent to deceive the PTO when failing to disclose the Cohen Patent during prosecution of the '849 Patent is supported by, among other things, 1) the fact that Mr. Burke knew about the Cohen Patent and its materiality; and 2) that, on information and belief, Mr. Burke wanted the application for the '849 Patent, which is related to EPC's Parent Patent, to issue as a patent in order to, *inter alia*, enforce it against others and seek licensing fees therefor.

**FIFTH AFFIRMATIVE DEFENSE: UNENFORCEABILITY DUE TO PATENT MISUSE OF U.S. PATENT NO. 7,571,849**

51.    Wells Fargo restates and incorporates by reference its allegations in paragraphs 1-14 and 17-50 of its Affirmative Defenses.

52.    EPC has committed patent misuse through its enforcement of the '849 Patent, which it knew to be invalid and unenforceable as set forth in paragraphs 1-14 and 17-50 of Wells Fargo's Affirmative Defenses.  By asserting a patent that EPC knew, or should have known, to be invalid and unenforceable, EPC has impermissibly broadened the physical and/or temporal scope of the '849 Patent and has done so in a manner that has anticompetitive effects.

**SIXTH AFFIRMATIVE DEFENSE: NONINFRINGEMENT OF U.S. PATENT NO. 8,025,217**

53.    Wells Fargo has not infringed any claim of the '217 Patent, either literally, or under the doctrine of equivalents.

**SEVENTH AFFIRMATIVE DEFENSE: INVALIDITY OF U.S. PATENT NO. 8,025,217**

54.    The '217 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with the patent laws, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112.

**EIGHTH AFFIRMATIVE DEFENSE: UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT DURING PROSECUTION OF U.S. PATENT NO. 8,025,217**

55.    Wells Fargo restates and incorporates by reference its allegations in paragraphs 1-14 of its Affirmative Defenses.

56.    The application for the '217 Patent was filed on August 8, 2009 and is a continuation of application No. 11/421,113, now the '849 Patent.

57.    The '217 Patent issued on September 27, 2011.

58.     The '217 Patent is entitled "Method and System to Create and Distribute Excess Funds from Consumer Spending Transactions."

59.     The '217 Patent has one independent claim (claim 1) and three dependent claims (claims 2-4).

60.     Bertram V. Burke is identified as the inventor on the face of the '217 Patent.

61.     Bertram V. Burke is the co-founder of EPC.

62.     EPC purports to be the assignee of the '217 Patent.

63.     On information and belief, Mr. Burke is and has been directly and substantially involved in the prosecution of EPC patents, including the '217 Patent.

64.     In connection with the application for the '217 Patent, Mr. Burke signed a declaration in which he acknowledged his duty to disclose to the Patent Office information known to him to be material to patentability in accordance with 37 C.F.R. § 1.56.

65.     On information and belief, during prosecution of the application for the '217 Patent, Mr. Burke was aware of the duty of candor and good faith in dealing with the Patent Office imposed on him by 37 C.F.R. § 1.56.

66.     On information and belief, during prosecution of the application for the '217 Patent, Mr. Burke was aware of the requirements of 37 C.F.R. § 1.56 to disclose to the Patent Office information known to him to be material to patentability of the '217 Patent.

**BOA Action**

67.     On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose the existence of the BOA Action during prosecution of the '217 Patent.

68.     Based on Mr. Burke's failure to disclose the existence of the BOA Action during

prosecution of the '217 Patent, the '217 Patent is unenforceable due to inequitable conduct. Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen*, 575 F.3d 1312:

(a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

Mr. Burke knew of the BOA Action, including through his position at EPC.   On information and belief, Mr. Burke deliberately withheld the existence of the BOA Action during prosecution of the '217 Patent.

(b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

MPEP § 2001.06(c) states that "[w]here the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the  attention of the U.S. Patent and Trademark Office."  Accordingly, because EPC's Parent Patent was at issue in the BOA Action and because the EPC Parent Patent and the '217 Patent are related and involve the same subject matter, the BOA Action is relevant to all claims, and all limitations in those claims, of the '217 Patent.

(c) "**Where** in th[e] references the material information is found" (*id.*)

Per MPEP § 2001.06(c), the entirety of the BOA Action is material.  In addition, specific examples of material information from the BOA Action include, without limitation:

- The Court's May 27, 2009 ruling that EPC's Parent Patent is invalid for lack of patentable subject matter.

- Prior Art disclosed during the BOA action and Bank of America's allegations of invalidity of EPC's Parent Patent, including but not limited to the Cohen Patent and the McCarthy Patent, both of which were the subject of Bank of America's motion for summary judgment of unenforceability.

- Bank of America's allegations of unenforceability of EPC's Parent Patent based on EPC's inequitable conduct before the Patent Office in prosecuting EPC's Parent

Patent.

(d) **"'Why'** the withheld information is material and not cumulative" (*id*.) or why the misrepresented information is material

Per MPEP § 2001.06(c), the entirety of the BOA Action is material.  But for Mr. Burke's failure to disclose the BOA Action to the Examiner, the Examiner would not have allowed one or more of the claims of the '217 Patent.  *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

(e) **"'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

Had the Examiner known about the BOA Action, the Examiner would have used such information to find one or more claims of the '217 Patent unpatentable, anticipated by prior art disclosed during the BOA Action, and/or rendered obvious by prior art disclosed during the BOA Action.

(f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date the application for the '217 Patent was filed and continuing until the '217 Patent issued: August 8, 2009 through September 27, 2011.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

Mr. Burke knew of the BOA Action including through his position at EPC and his involvement in the BOA Action.

(h)  "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO.  Mr.

Burke's specific intent to deceive the PTO when failing to disclose the BOA Action during prosecution of the '217 Patent is supported by, among other things, 1) the fact that Mr. Burke knew about the BOA Action; 2) that as of May 27, 2009, before the application for the '217 Patent was filed, the Court in the BOA Action found EPC's Parent Patent invalid for lack of patentable subject matter; and 3) that, on information and belief, Mr. Burke wanted the application for the '217 Patent, which is related to EPC's Parent Patent, to issue as a patent in order to, *inter alia*, seek licensing fees therefor.

**Cohen Patent**

69.     On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose during prosecution of the '217 Patent the Cohen Patent.

70.     Based on Mr. Burke's failure to disclose the Cohen Patent during prosecution of the '217 Patent, the '217 Patent is unenforceable due to inequitable conduct.  Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen*, 575 F.3d 1312:

(a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

On information and belief, Mr. Burke knew of Cohen Patent.  On information and belief, Mr. Burke deliberately withheld the existence of the Cohen Patent during prosecution of the '217 Patent.

(b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

The Cohen Patent is relevant to at least claim 1 of the '217 Patent.  The Cohen Patent discloses or renders obvious each limitation of claim 1, including:

1. A system for accumulating credits from a customer account belonging to the customer and managed by an institution and placing the credits into a provider account, comprising:

an information processor;

said information processor including a data store with data identifying the customer, the rounding determinant, the managed institution, and the account;

said data store including machine readable instructions authorizing the processor to access and read the customer account;

said data store including machine readable instructions to calculate rounders after receiving a plurality of payment transactions from the read customer account and to calculate an excess based on the rounders;

said data store including machine readable instructions to withdraw the excess from the customer account; said data store including machine readable instructions to transfer the withdrawn excess to the provider account.

(c) "**Where** in th[e] references the material information is found" (*id.*)

The material information can be found throughout the Cohen Patent including but not limited to the Cohen Patent at Abstract ("The purchasing system with a rebate feature… computes and reports a rebate which is due in the future to each subscriber-purchaser… The rebate is based upon cost of the individually selected goods and services and the rebate factor…"); Tables I, III (describing data associated with transaction); 5:10-19 (describing Table I); 5:64-68 (describing Table III); Fig. 4 (describing data associated with transaction); 6:14-24 (describing Fig. 4); 2:35-43 ("This computer program also includes means for inputting an updated rebate factor at the end of the fiscal year…"); 7:20-32 ("[A]n updated rebate factor is input into the purchasing system… [T]he program can compute the individual annuity contract rebate values for each subscriber-purchaser based upon that purchaser's total purchases versus all the purchases made through the transactional system (i.e., the percentage of individual to the total goods and services bought by all purchasers."); Claim 1 ("means, coupled to the correlation

means and the factor input means, for computing and reporting a rebate, due in the future, to each individual subscriber-purchaser at a predetermined future date from said future benefit guarantor to each said subscriber-purchaser based upon the cost of the individually selected good and service and said rebate factor."); 4:36-62 ("At the end of each accounting quarter, the system generates a quarterly report for each subscriber-purchaser showing the total individual purchases made during the quarter and an estimated rebate..."); Abstract ("[T]he system further instructs the guarantor to issue individual future guaranteed rebate contracts to each purchaser-subscriber based upon the total rebates or total purchases over the accounting period."); Figures 1a-b, 2-4; and Claims 2-4.

    (d)  **"'Why'** the withheld information is material and not cumulative" (*id*.) or why the misrepresented information is material

The Cohen Patent is material and not cumulative because but for the failure to disclose the Cohen Patent to the Examiner, the Examiner would not have allowed one or more claims of the '217 Patent including at least claim 1.  *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

    (e)  **"'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

On information and belief, had the Examiner known about the Cohen Patent, the Examiner would have used such information to find one or more claims of the '217 Patent anticipated and/or rendered obvious by the Cohen Patent under 35 U.S.C. §§ 102 and/or 103.

    (f)  The "**when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission of the Cohen Patent committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date the application resulting in the '217 Patent

31

was filed until the '217 Patent issued:  August 8, 2009 – September 27, 2011.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

On information and belief, Mr. Burke knew of the Cohen Patent and its materiality to the '217 Parent Patent at least through his role in EPC and involvement in the BOA Action and other means.

(h) "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO.  Mr. Burke's specific intent to deceive the PTO when failing to disclose the Cohen Patent during prosecution of the '217 Patent is supported by, among other things, 1) the fact that Mr. Burke knew about the Cohen Patent and its materiality; and 2) that, on information and belief, Mr. Burke wanted the application for the '217 Patent, which is related to EPC's Parent Patent, to issue as a patent in order to, *inter alia*, enforce it against others and seek licensing fees therefor.

**NINTH AFFIRMATIVE DEFENSE:  UNENFORCEABILITY OF U.S. PATENT NO. 8,025,217 DUE TO INEQUITABLE CONDUCT THAT OCCURRED DURING THE PROSECUTION OF THE EPC PARENT PATENT (U.S. PATENT NO. 6,112,191)**

71.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 1-14 and 17-36 of its Affirmative Defenses above.

72.     The '217 Patent, which claims to be a continuation of the '849 Patent which claims to be a continuation of the EPC Parent Patent, and claims priority to the EPC Parent Patent, is unenforceable as a result of the inequitable conduct that occurred during prosecution of the EPC Parent Patent.

**TENTH AFFIRMATIVE DEFENSE:  UNENFORCEABILITY OF U.S. PATENT NO. 8,025,217 DUE TO INEQUITABLE CONDUCT THAT OCCURRED DURING THE PROSECUTION OF U.S. PATENT NO. 7,575,849**

73.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 1-14 and 37-50 of its Affirmative Defenses above.

74.     The '217 Patent, which claims to be a continuation of the '849 Patent and claims priority to the '849 Patent, is unenforceable as a result of the inequitable conduct that occurred during prosecution of the '849 Patent.

**ELEVENTH AFFIRMATIVE DEFENSE: UNENFORCEABILITY DUE TO PATENT MISUSE OF U.S. PATENT NO. 8,025,217**

75.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 1-14 and 55-74 of its Affirmative Defenses above.

76.     EPC has committed patent misuse through its enforcement of the '217 Patent, which it knew to be invalid and unenforceable as set forth in paragraphs 1-14 and 55-74 of Wells Fargo's Affirmative Defenses.  By asserting a patent that EPC knew, or should have known, to be invalid and unenforceable, EPC has impermissibly broadened the physical and/or temporal scope of the '217 Patent and has done so in a manner that has anticompetitive effects.

**PRAYER FOR RELIEF**

WHEREFORE, Wells Fargo prays for judgment in its favor and against EPC as follows:

(a)     Denying all relief sought by EPC in its Amended Complaint;

(b)     Denying all equitable relief sought by EPC;

(c)     Dismissing with prejudice EPC's Amended Complaint and all claims asserted therein against Wells Fargo;

(d)     Holding this case to be exceptional and awarding Wells Fargo its attorneys' fees under 35 U.S.C. § 285;

(e)     Awarding Wells Fargo its costs pursuant to Fed. R. Civ. P. 54(d);

(f)        Awarding such other relief as this Court deems proper and just.

## COUNTERCLAIMS

For its Counterclaims against Every Penny Counts, Inc., Wells Fargo states as follows:

## PARTIES

1.        Defendant Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A., ("Wells Fargo") is a national banking association headquartered in San Francisco, California.

2.        On information and belief, Plaintiff Every Penny Counts, Inc. ("Plaintiff" or "EPC") is a corporation organized and existing under the laws of the State of Delaware with a place of business in Sarasota County, Florida.  EPC holds itself out as a company that licenses intellectual property to financial institutions, including patents related to what it calls its "Bank Rounder" program.

## JURISDICTION AND VENUE

3.        This Court has jurisdiction over the subject matter of these counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, and 2202, and venue for these Counterclaims is proper in this district.

4.        This Court has personal jurisdiction over EPC because EPC has submitted to such jurisdiction for purposes of this case.

5.        Venue is established in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400. Venue is additionally proper in this Court because EPC has consented to the propriety of venue in this Court by filing its claim for patent infringement in this Court, in response to which these counterclaims are filed.

6.        An actual controversy exists under the Declaratory Judgment Act because EPC

has asserted and is asserting infringement of the '849 Patent and '217 Patent by Wells Fargo and Wells Fargo denies those assertions.

## FACTUAL BACKGROUND

### *EPC's Parent Patent (U.S. Patent No. 6,112,191)*

7.      The '849 Patent and '217 Patent each are related to U.S. Patent No. 6,112,191 ("EPC's Parent Patent").   The '849 Patent is listed as a "[d]ivision of application No. 09/611,905, filed on Jul. 7, 2000, which is a continuation of application No. 08/429,758, filed on Apr. 27, 1995, now Pat. No. 6,112,191."   The '217 Patent is listed as a "[c]ontinuation of application No. 11/421,113, filed on May 31, 2006, now Pat. No. 7,571,849."

### *EPC Asserts EPC's Parent Patent Against Bank of America et al.*

8.      On January 25, 2007, EPC filed a lawsuit against Bank of America Corporation ("BOA") and Visa U.S.A., Inc. ("Visa") alleging infringement of EPC's Parent Patent in a case entitled *Every Penny Counts, Inc. v. Bank of America Corp. et al.*, Case No. 2:07-cv-00042-JES-SPC (M.D. Florida) ("the BOA Action").

9.      On April 19, 2007, EPC filed a notice of voluntary dismissal as to Visa in the BOA Action, and the case proceeded as to BOA.

10.     BOA asserted several defenses against EPC's infringement claims, including that EPC's Parent Patent was invalid as anticipated by and/or obvious over prior art, including but not limited to U.S. Patent No. 4,750,119 ("the Cohen Patent") and U.S. Patent No. 5,287,268 ("the McCarthy Patent").

11.     On December 19, 2007, BOA amended its answer and counterclaims to allege that EPC's Parent Patent was unenforceable for inequitable conduct before the Patent Office for failure to disclose the Cohen or McCarthy Patents to the Patent Office during prosecution.

12.     On October 14, 2008, BOA moved for summary judgment of noninfringement and unenforceability based on EPC's inequitable conduct before the Patent Office in prosecuting EPC's Parent Patent.

### The Middle District Of Florida Rules That EPC's Parent Patent Is Invalid Under 35 U.S.C. § 101

13.     On October 30, 2008, after BOA moved for summary judgment, the United States Court of Appeals for the Federal Circuit issued its *en banc* decision in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) ("the *Bilski* decision").  BOA then asked the Court to postpone the hearing on the pending summary judgment motion and reopen discovery for the purpose of allowing the parties to examine the effect of the *Bilski* decision.  The Court allowed the additional discovery and permitted the parties to file addenda to their previously filed summary judgment papers.

14.     On March 15, 2009, BOA filed an addendum to its initial summary judgment motion arguing that EPC's alleged invention is unpatentable under 35 U.S.C. § 101.

15.     On May 27, 2009, the Court in the BOA Action granted BOA's summary judgment motion, ruling that EPC's Parent Patent is invalid for lack of patentable subject matter.

16.     On February 8, 2011, EPC and BOA jointly moved to vacate the judgment of invalidity as to EPC's Parent Patent in light of a subsequent settlement, and on August 8, 2011, the Court granted that motion.

### EPC Asserts U.S. Patent No. 7,571,849 And U.S. Patent No. 8,025,217 Against Wells Fargo Knowing Them To Be Invalid, Unenforceable, And Not Infringed

17.     On information and belief, EPC filed the instant lawsuit against Wells Fargo in bad faith, alleging infringement of the '849 and '217 Patents.

18.     As was the case with EPC's Parent Patent, the '849 and '217 Patents are invalid for, *inter alia*, lack of patentable subject matter under 35 U.S.C. § 101, and on information and

belief, EPC knows or should know this to be true.

19.     The '849 and '217 Patents are also invalid for failure to meet the conditions of patentability and/or otherwise comply with the patent laws, including but not limited to 35 U.S.C. §§ 102, 103 and 112 and on information and belief, EPC knows or should know this to be true.

20.     Neither of the '849 or '217 Patents has been infringed by Wells Fargo, and on information and belief, EPC knows or should know this to be true.

<u>**COUNT I: DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 7,571,849**</u>

21.     Wells Fargo has not infringed and does not infringe any valid and enforceable claim of the '849 Patent, either literally, or under the doctrine of equivalents.

22.     An actual case or controversy exists between Wells Fargo and EPC as to whether the '849 Patent is not infringed by Wells Fargo.

23.     A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights regarding the '849 Patent.

<u>**COUNT II: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,571,849**</u>

24.     The '849 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with the patent laws, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112.

25.     An actual case or controversy exists between Wells Fargo and EPC as to whether the asserted claims of the '849 Patent are invalid.

26.     A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights as to whether the '849 Patent is invalid.

**COUNT III:  DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S. PATENT NO. 7,571,849 DUE TO INEQUITABLE CONDUCT DURING PROSECUTION OF EPC'S PARENT PATENT (U.S. PATENT NO. 6,112,191)**

27.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20 of its Counterclaims.

28.     An actual case or controversy exists between Wells Fargo and EPC as to whether the asserted claims of the '849 Patent are unenforceable as a result of inequitable conduct.

29.     A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights as to whether the '849 Patent is unenforceable as a result of inequitable conduct.

30.     The EPC Parent Patent issued on August 29, 2000.

31.     The EPC Parent Patent is entitled "Method and System to Create and Distribute Excess Funds from Consumer Spending Transactions."

32.     Bertram V. Burke is identified as the inventor on the face of the EPC Parent Patent.

33.     Bertram V. Burke is the co-founder of EPC.

34.     EPC purports to be the assignee of the EPC Parent Patent.

35.     On information and belief, Mr. Burke is and has been involved in the prosecution of EPC patents, including the EPC Parent Patent.

36.     In connection with the application for the EPC Parent Patent, Mr. Burke signed a declaration in which he acknowledged his duty to disclose to the Patent Office information known to him to be material to patentability in accordance with 37 C.F.R. § 1.56.

37.     On information and belief, during prosecution of the application for the EPC Parent Patent, Mr. Burke was aware of the duty of candor and good faith in dealing with the

Patent Office imposed on him by 37 C.F.R. § 1.56.

38.     On information and belief, during prosecution of the application for the EPC Parent Patent, Mr. Burke was aware of the requirements of 37 C.F.R. § 1.56 to disclose to the Patent Office information known to him to be material to patentability of the EPC Parent Patent.

**Cohen Patent**

39.     On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose during prosecution of the EPC Parent Patent U.S. Patent No. 4,750,119 ("the Cohen Patent").

40.     Based on Mr. Burke's failure to disclose the Cohen Patent during prosecution of the EPC Parent Patent, the EPC Parent Patent is unenforceable due to inequitable conduct. Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009):

(a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

On information and belief, Mr. Burke knew of the Cohen Patent.  On information and belief, Mr. Burke deliberately withheld the existence of the Cohen Patent during prosecution of the EPC Parent Patent.

(b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

The Cohen Patent is relevant to at least claim 15 of the EPC Parent Patent.  The Cohen Patent discloses or renders obvious each limitation of claim 15, including:

15. A system, comprising:

a network;

entry means coupled to said network for entering into the network an amount being paid in a transaction by a payor;

identification entering means in said entry means and coupled to said network for entering an identification of the payor;

said network including computing means having data concerning the payor including an excess determinant established by the payor for the accounts;

said computing means in said network being responsive to said data and said identification entering means for determining an excess payment to the basis of the determinant established by the payor, and

said computing means in said network being responsive to the excess payment for apportioning at least a part of the excess payment among said accounts on the basis of the excess determined and established by the payor and on the basis of commands established by the payor and controlled by other than the payee.

(c)   **Where** in th[e] references the material information is found" (*id.*)

The material information can be found throughout the Cohen Patent including but not limited to the Cohen Patent at Abstract ("The purchasing system with a rebate feature… computes and reports a rebate which is due in the future to each subscriber-purchaser… The rebate is based upon cost of the individually selected goods and services and the rebate factor…"); 3:1-3 (describing network arrangement); 6:34-35 (same); 8:11-13 (same); 3:39-62 ("The consumer or subscriber-purchaser, places an order for a selected good or service from a particular vendor… [T]hat order may be placed over the telephone to an individual at a purchasing center…"); Tables I, III (describing identification information); Fig. 4 (same); 3:13-15 ("The use of the term 'subscriber' is based on the concept that the individual subscribes to this transactional system of trading or maketing [sic] goods and services."); 1:22-27 ("[T]he present invention… allows subscriber-purchasers to buy goods and services and obtain future guaranteed rebates based upon the cost of that purchase."); 4:63-5:2 ("This transactional system motivates the subscriber-purchasers to return to the purchasing center…"); Claim 1 ("means,

coupled to the correlation means and the factor input means, for computing and reporting a rebate, due in the future, to each individual subscriber-purchaser at a predetermined future date from said future benefit guarantor to each said subscriber-purchaser based upon the cost of the individually selected good and service and said rebate factor."); 4:36-62 ("At the end of each accounting quarter, the system generates a quarterly report for each subscriber-purchaser showing the total individual purchases made during the quarter and an estimated rebate..."); 2:35-43 ("This computer program also includes means for inputting an updated rebate factor at the end of the fiscal year…"); Figures 1a-b, 2-4; and Claims 2-4.

(d) **"'Why'** the withheld information is material and not cumulative" (*id*.) or why the misrepresented information is material

The Cohen Patent is material and not cumulative because but for the failure to disclose the Cohen Patent to the Examiner, the Examiner would not have allowed one or more claims of the EPC Parent Patent including at least claim 15. *See Therasense v. Becton, Dickson, and Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

(e) **"'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

On information and belief, had the Examiner known about the Cohen Patent, the Examiner would have used such information to find one or more claims of the EPC Parent Patent anticipated and/or rendered obvious by the Cohen Patent under 35 U.S.C. §§ 102 and/or 103.

(f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission of the Cohen Patent committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date Mr. Burke was first aware of the Cohen

Patent and its materiality (on information and belief, at least as early as 1997) and continuing

until the EPC Parent Patent issued on August 29, 2000.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

On information and belief, Mr. Burke knew of the Cohen Patent and its materiality to the

EPC Parent Patent.

(h) "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO.  Mr.

Burke's specific intent to deceive the PTO when failing to disclose the Cohen Patent during

prosecution of the EPC Parent Patent is supported by, among other things, 1) the fact that Mr.

Burke knew about the Cohen Patent and its materiality; and 2) that, on information and belief,

Mr. Burke wanted the application for the EPC Parent Patent to issue as a patent in order to, *inter

alia*, enforce it against others and seek licensing fees therefor.

41.    Mr. Leo Stanger was the prosecuting attorney who prosecuted the application

resulting in the EPC Parent Patent and is identified on the face of the EPC Parent Patent.

42.    On information and belief, Mr. Stanger has been involved in the prosecution of

EPC patents, including the EPC Parent Patent.

43.    In connection with the application for the EPC Parent Patent, Mr. Burke signed a

declaration in which he acknowledged his duty to disclose to the Patent Office information

known to him to be material to patentability in accordance with 37 C.F.R. § 1.56.

44.    On information and belief, during prosecution of the application for the EPC

Parent Patent, Mr. Stanger was aware of the duty of candor and good faith in dealing with the

Patent Office imposed on him by 37 C.F.R. § 1.56.

45.    On information and belief, during prosecution of the application for the EPC

42

Parent Patent, Mr. Stanger was aware of the requirements of 37 C.F.R. § 1.56 to disclose to the Patent Office information known to him to be material to patentability of the EPC Parent Patent.

### McCarthy Patent

46. On information and belief, Mr. Stanger, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose during prosecution of the EPC Parent Patent U.S. Pat. No. 5,287,268 ("the McCarthy Patent").

47. Based on Mr. Stanger's failure to disclose the McCarthy Patent during prosecution of the EPC Parent Patent, the EPC Parent Patent is unenforceable due to inequitable conduct. Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen*, 575 F.3d 1312:

(a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

On information and belief, Mr. Stanger knew of the McCarthy Patent. On information and belief, Mr. Stanger deliberately withheld the existence of the McCarthy Patent during prosecution of the EPC Parent Patent.

(b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

The McCarthy Patent is relevant to at least claims 15 and 28 of the EPC Parent Patent. The McCarthy Patent discloses or renders obvious each limitation of claim 15, including:

15. A system, comprising:

a network;

entry means coupled to said network for entering into the network an amount being paid in a transaction by a payor;

identification entering means in said entry means and coupled to said network for

entering an identification of the payor;

said network including computing means having data concerning the payor including an excess determinant established by the payor for the accounts;

said computing means in said network being responsive to said data and said identification entering means for determining an excess payment to the basis of the determinant established by the payor, and

said computing means in said network being responsive to the excess payment for apportioning at least a part of the excess payment among said accounts on the basis of the excess determined and established by the payor and on the basis of commands established by the payor and controlled by other than the payee.

The McCarthy Patent discloses or renders obvious each limitation of claim 28, including:

28. A point of sale operating method, comprising:

entering an amount corresponding to a price of a product into a cash register;

entering an amount corresponding to cash being paid;

determining any excess payment;

entering a card number;

transmitting data of the excess payment to a separate station and in said separate station apportioning at least a part of the amounts of excess cash payment to one or more predetermined accounts selected on the basis of the card number and controlled by other than the payee;

crediting the excess paid to the selected accounts to the card number.

(c) "**Where** in th[e] references the material information is found" (*id.*)

The material information can be found throughout the McCarthy Patent including but not limited to the McCarthy Patent at Title ("Centralized Consumer Cash Value Accumulation System for Multiple Merchants"); Abstract ("A centralized system of accumulating cash value for consumers based upon point-of-sale transactions with multiple merchants is disclosed wherein for each transaction, the consumer's account number…  is transmitted to a central system along with data identifying the merchant and a credit value for the transaction.  The credit

value may be based upon predetermined incentives associated with the transaction such as coupons, rebates or discounts, and/or upon a credit rate determined by the merchant applied to the amount of the transaction. At the central location, a cash value for that consumer is incremented by the credit value and a bill value for that merchant is similarly incremented… [A]t selected intervals, consumers are given access to their respective accumulated cash values… "); 4:11-13 (describing network arrangement); 2:65-3:3 ("Each merchant location 14 includes at least one computer unit 16 such as a microprocessor and associated peripherals which communicates… with a consumer data input device 20, a transaction data input device 22, a memory 24 and an input/output (I/O) device 26."); 3:15-33 ("Where a plastic card is used, device 20 may also include a keyboard for entry of a personal identification number (PIN)…"); 2:4-16 (describing identification information); 5:34-40 (same); 4:18-24 (same); 3:45-58 ("Computer 16 will also preferably determine a credit value for the transaction based upon the transaction data input and the credit rate (e.g., purchase of $25.00 and credit rate of 0.10=$2.50 credit value) and will output to the central system 12, through I/O device 26 and communication line 30, the consumer's account number and birthdate if utilized, the credit value for that transaction and the merchant data."); 4:37-39 ("The data received at I/O device 40 is sorted out by computer 54 under control of an operation program stored in memory 48."); 4:45-54 ("Once the proper account is found, the cash value segment is incremented in relation to the amount of the credit value data received from the merchant for that transaction… The bill value segment is then similarly incremented in relation to the amount of the credit value data received from that merchant."); Figure; Claims 1, 5-6, 8, and 12.

(d)   **"'Why'** the withheld information is material and not cumulative" (*id*.) or why the misrepresented information is material

The McCarthy Patent is material and not cumulative because but for the failure to

disclose the McCarthy Patent to the Examiner, the Examiner would not have allowed one or more claims of the EPC Parent Patent including at least claims 15 and 28.  *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

(e) "**'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330)

On information and belief, had the Examiner known about the McCarthy Patent, the Examiner would have used such information to find one or more claims of the EPC Parent Patent anticipated and/or rendered obvious by the McCarthy Patent under 35 U.S.C. §§ 102 and/or 103.

(f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission of the McCarthy Patent committed before the PTO by Mr. Stanger occurred during the entirety of the period beginning on the date Mr. Stanger was first aware of the McCarthy Patent and its materiality (on information and belief, at least as early as September 1996) and continuing until the EPC Parent Patent issued on August 29, 2000.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

On information and belief, Mr. Stanger knew of the McCarthy Patent and its materiality to the EPC Parent Patent.  Mr. Stanger filed, on Mr. Burke's behalf, an international patent application pursuant to the Patent Cooperation Treaty (WO 96/34358 or "PCT application") that claimed priority to the application for the EPC Parent Patent, Appl. No. 08/429,758 ("the '758 application"). Accordingly, the PCT application included almost identical copies of the claims that ultimately issued from the '758 application. The International Search Authority handling Mr. Burke's PCT application issued an International Search Report that cited the McCarthy Patent.

46

The International Search Authority cited the McCarthy Patent as a "document[] of particular relevance" to claims 15-45 of the PCT application, at least some of which were virtually identical to the pending claims in the '758 application.

(h) "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Stanger acted with specific intent to deceive the PTO. Mr. Stanger's specific intent to deceive the PTO when failing to disclose the McCarthy Patent during prosecution of the EPC Parent Patent is supported by, among other things, 1) the fact that Mr. Stanger knew about the McCarthy Patent and its materiality; and 2) that, on information and belief, Mr. Stanger wanted the application for the EPC Parent Patent to issue as a patent because he had an interest in EPC and obtaining patents for EPC.

48.    The '849 Patent, which claims priority to and to be a continuation of the EPC Parent Patent, is unenforceable as a result of the inequitable conduct that occurred during prosecution of the EPC Parent Patent.

**COUNT IV: DECLARATORY JUDGMENT OF UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT DURING PROSECUTION OF U.S. PATENT NO. 7,571,849**

49.    Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20 of its Counterclaims.

50.    An actual case or controversy exists between Wells Fargo and EPC as to whether the asserted claims of the '849 Patent are unenforceable as a result of inequitable conduct.

51.    A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights as to whether the '849 Patent is unenforceable as a result of inequitable conduct.

52.    The '849 Patent issued on August 11, 2009.

53.    The '849 Patent is entitled "Method and System to Create and Distribute Excess

Funds from Consumer Spending Transactions."

54.      Bertram V. Burke is identified as the inventor on the face of the '849 Patent.

55.      Bertram V. Burke is the co-founder of EPC.

56.      EPC purports to be the assignee of the '849 Patent.

57.      On information and belief, Mr. Burke is and has been involved in the prosecution of EPC patents, including the '849 Patent.

58.      In connection with the application for the '849 Patent, Mr. Burke signed a declaration in which he acknowledged his duty to disclose to the Patent Office information known to him to be material to patentability in accordance with 37 C.F.R. § 1.56.

59.      On information and belief, during prosecution of the application for the '849 Patent, Mr. Burke was aware of the duty of candor and good faith in dealing with the Patent Office imposed on him by 37 C.F.R. § 1.56.

60.      On information and belief, during prosecution of the application for the '849 Patent, Mr. Burke was aware of the requirements of 37 C.F.R. § 1.56 to disclose to the Patent Office information known to him to be material to patentability of the '849 Patent.

**BOA Action**

61.      On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose during prosecution of the '849 Patent the BOA Action, including but not limited to BOA's contentions in the BOA Action that the EPC Parent Patent was invalid and unenforceable; the Court's May 27, 2009 Order that the EPC Parent Patent was invalid; or the prior art that was the subject of BOA's invalidity and unenforceability claims, including the Cohen Patent.

62.     Based on Mr. Burke's failure to disclose the BOA Action during prosecution of the '849 Patent, the '849 Patent is unenforceable due to inequitable conduct.  Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen*, 575 F.3d 1312:

(a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

Mr. Burke knew of the BOA Action, including through his position at EPC and participation in the BOA Action.  On information and belief, Mr. Burke deliberately withheld the existence of the BOA Action during prosecution of the '849 Patent.

(b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

MPEP § 2001.06(c) states that "[w]here the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the  attention of the U.S. Patent and Trademark Office."  Accordingly, because EPC's Parent Patent was at issue in the BOA Action and because the EPC Parent Patent and the '849 Patent are related and involve the same subject matter, the BOA Action is relevant to all claims, and all limitations in those claims, of the '849 Patent.

(c) "**Where** in th[e] references the material information is found" (*id.*)

Per MPEP § 2001.06(c), the entirety of the BOA Action is material.  In addition, specific examples of material information from the BOA Action include, without limitation:

- The Court's May 27, 2009 ruling that EPC's Parent Patent is invalid for lack of patentable subject matter.

- Prior Art disclosed during the BOA action and Bank of America's allegations of invalidity of EPC's Parent Patent, including but not limited to the Cohen Patent and the McCarthy Patent, both of which were the subject of Bank of America's motion for summary judgment of unenforceability.

- Bank of America's allegations of unenforceability of EPC's Parent Patent based on EPC's inequitable conduct before the Patent Office in prosecuting EPC's Parent Patent.

(d) **"'Why'** the withheld information is material and not cumulative" (*id*.) or why the misrepresented information is material

Per MPEP § 2001.06(c), the entirety of the BOA Action is material.  But for Mr. Burke's failure to disclose the BOA Action to the Examiner, the Examiner would not have allowed one or more of the claims of the '849 Patent.  *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

(e) **"'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

On information and belief, had the Examiner known about the BOA Action, the Examiner would have used such information to find one or more claims of the '849 Patent unpatentable, anticipated by prior art disclosed during the BOA Action, and/or rendered obvious by prior art disclosed during the BOA Action.

(f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission of the BOA Action committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date the BOA Action was initiated and continuing until the '849 Patent issued: January 25, 2007 through August 11, 2009.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

Mr. Burke knew of the BOA Action including through his position at EPC and his involvement in the BOA Action.

(h) "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO.  Mr.

Burke's specific intent to deceive the PTO when failing to disclose material information during

prosecution of the '849 Patent is supported by, among other things, 1) the fact that Mr. Burke

knew about the BOA Action; 2) that as of May 27, 2009, before the '849 Patent issued, the Court

in the BOA Action found EPC's Parent Patent invalid for lack of patentable subject matter; and

3) that, on information and belief, Mr. Burke wanted the application for the '849 Patent, which is

related to EPC's Parent Patent, to issue as a patent in order to, *inter alia*, enforce it against others

and seek licensing fees therefor.

### Cohen Patent

63.     On information and belief, Mr. Burke, in breach of the duty of candor and good

faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to

disclose during prosecution of the '849 Patent U.S. Patent No. 4,750,119 ("the Cohen Patent").

64.     Based on Mr. Burke's failure to disclose the Cohen Patent during prosecution of

the '849 Patent, the '849 Patent is unenforceable due to inequitable conduct.  Specifically, under

the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit

in *Exergen*, 575 F.3d 1312:

> (a) "**[W]ho** both knew of the material information and deliberately withheld or
> misrepresented it" (*Exergen*, 575 F.3d at 1329)

On information and belief, Mr. Burke knew of Cohen Patent.  On information and belief,

Mr. Burke deliberately withheld the existence of the Cohen Patent during prosecution of the '849

Patent.

> (b) **What** "claims, and which limitations in those claims, the withheld references [or
> misrepresentation] are relevant to" (*id.*)

The Cohen Patent is relevant to at least claim 1 of the '849 Patent.  The Cohen Patent

disclModifyoses or renders obvious each limitation of claim 1, including:

> 1. A method for performing a payment transaction, the method comprising:
>
> electronically receiving, in connection with the payment transaction, a determinant, apportioning data, payment transaction data comprising a transaction amount, and operating account identifying data that identifies an operating account;
>
> generating a rounder amount based on the transaction amount and the determinant, wherein generating a rounder amount is performed after receiving a plurality of payment transactions;
> modifying a balance of the operating account based on the transaction amount and the rounder amount;
>
> apportioning at least a portion of the rounder amount to one or more other accounts selected by a holder of the operating account; and
>
> depositing the apportioned parts of the rounder amount to the one or more other accounts.
>
> (c)  "**Where** in th[e] references the material information is found" (*id.*)

The material information can be found throughout the Cohen Patent including but not limited to the Cohen Patent at Abstract ("The purchasing system with a rebate feature… computes and reports a rebate which is due in the future to each subscriber-purchaser… The rebate is based upon cost of the individually selected goods and services and the rebate factor…"); Tables I, III (describing data associated with transaction); 5:10-19 (describing Table I); 5:64-68 (describing Table III); Fig. 4 (describing data associated with transaction); 6:14-24 (describing Fig. 4); 2:35-43 ("This computer program also includes means for inputting an updated rebate factor at the end of the fiscal year…"); 7:20-32 ("[A]n updated rebate factor is input into the purchasing system…  [T]he program can compute the individual annuity contract rebate values for each subscriber-purchaser based upon that purchaser's total purchases versus all the purchases made through the transactional system (i.e., the percentage of individual to the total goods and services bought by all purchasers."); 3:13-15 ("The use of the term 'subscriber'

is based on the concept that the individual subscribes to this transactional system of trading or marketing [sic] goods and services."); 1:22-27 ("[T]he present invention… allows subscriber-purchasers to buy goods and services and obtain future guaranteed rebates based upon the cost of that purchase."); 4:63-5:2 ("This transactional system motivates the subscriber-purchasers to return to the purchasing center…"); Claim 1 ("means, coupled to the correlation means and the factor input means, for computing and reporting a rebate, due in the future, to each individual subscriber-purchaser at a predetermined future date from said future benefit guarantor to each said subscriber-purchaser based upon the cost of the individually selected good and service and said rebate factor."); 4:36-62 ("At the end of each accounting quarter, the system generates a quarterly report for each subscriber-purchaser showing the total individual purchases made during the quarter and an estimated rebate..."); Abstract ("[T]he system further instructs the guarantor to issue individual future guaranteed rebate contracts to each purchaser-subscriber based upon the total rebates or total purchases over the accounting period."); Figures 1a-b, 2-4; and Claims 2-4.

 (d) **"'Why'** the withheld information is material and not cumulative" (*id*.) or why the misrepresented information is material

   The Cohen Patent is material and not cumulative because but for the failure to disclose the Cohen Patent to the Examiner, the Examiner would not have allowed one or more claims of the '849 Patent including at least claim 1. *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

 (e) **"'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

   On information and belief, had the Examiner known about the Cohen Patent, the

Examiner would have used such information to find one or more claims of the '849 Patent anticipated and/or rendered obvious by the Cohen Patent under 35 U.S.C. §§ 102 and/or 103.

(f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id.* at 1327)

The omission of the Cohen Patent committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date the application resulting in the '849 Patent was filed until the '849 Patent issued:  May 31, 2006 - August 11, 2009.

(g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id.* at 1328)

On information and belief, Mr. Burke knew of the Cohen Patent and its materiality to the '849 Parent Patent at least through his role in EPC and involvement in the BOA Action and other means.

(h) "Specific **intent** to deceive the PTO" (*id.* at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO.  Mr. Burke's specific intent to deceive the PTO when failing to disclose the Cohen Patent during prosecution of the '849 Patent is supported by, among other things, 1) the fact that Mr. Burke knew about the Cohen Patent and its materiality; and 2) that, on information and belief, Mr. Burke wanted the application for the '849 Patent, which is related to EPC's Parent Patent, to issue as a patent in order to, *inter alia*, enforce it against others and seek licensing fees therefor.

### COUNT V: DECLARATORY JUDGMENT OF UNENFORCEABILITY DUE TO PATENT MISUSE OF U.S. PATENT NO. 7,571,849

65.    Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20 and 27-64 of its Counterclaims.

66.    EPC has committed patent misuse through its enforcement of the '849 Patent, which it knew to be invalid and unenforceable as set forth in paragraphs 7-20 and 27-64 of Wells

Fargo's Counterclaims.   By asserting a patent that EPC knew, or should have known, to be invalid and unenforceable, EPC has impermissibly broadened the physical and/or temporal scope of the '849 Patent and has done so in a manner that has anticompetitive effects.

67.     An actual case or controversy exists between Wells Fargo and EPC as to whether the '849 Patent is unenforceable for patent misuse.

68.     A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights regarding the '849 Patent.

### COUNT VI: DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 8,025,217

69.     Wells Fargo has not infringed and does not infringe any valid and enforceable claim of the '217 Patent, either directly, indirectly, literally, or under the doctrine of equivalents.

70.     An actual case or controversy exists between Wells Fargo and EPC as to whether the '217 Patent is not infringed by Wells Fargo.

71.     A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights regarding the '217 Patent.

### COUNT VII: DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 8,025,217

72.     The '217 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with the patent laws, including but not limited to 35 U.S.C. §§ 101, 102, 103 and 112.

73.     An actual case or controversy exists between Wells Fargo and EPC as to whether the asserted claims of the '217 Patent are invalid.

74.     A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights as to whether the '217 Patent is invalid.

## COUNT VIII: DECLARATORY JUDGMENT OF UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT DURING PROSECUTION OF U.S. PATENT NO. 8,025,217

75.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20 of its Counterclaims.

76.     An actual case or controversy exists between Wells Fargo and EPC as to whether the asserted claims of the '217 Patent are unenforceable as a result of inequitable conduct.

77.     A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights as to whether the '217 Patent is unenforceable as a result of inequitable conduct.

78.     The application for the '217 Patent was filed on August 8, 2009 and is a continuation of application No. 11/421,113, now the '849 Patent.

79.     The '217 Patent issued on September 27, 2011.

80.     The '217 Patent is entitled "Method and System to Create and Distribute Excess Funds from Consumer Spending Transactions."

81.     The '217 Patent has one independent claim (claim 1) and three dependent claims (claims 2-4).

82.     Bertram V. Burke is identified as the inventor on the face of the '217 Patent.

83.     Bertram V. Burke is the co-founder of EPC.

84.     EPC purports to be the assignee of the '217 Patent.

85.     On information and belief, Mr. Burke is and has been directly and substantially involved in the prosecution of EPC patents, including the '217 Patent.

86.     In connection with the application for the '217 Patent, Mr. Burke signed a declaration in which he acknowledged his duty to disclose to the Patent Office information known to him to be material to patentability in accordance with 37 C.F.R. § 1.56.

87.     On information and belief, during prosecution of the application for the '217 Patent, Mr. Burke was aware of the duty of candor and good faith in dealing with the Patent Office imposed on him by 37 C.F.R. § 1.56.

88.     On information and belief, during prosecution of the application for the '217 Patent, Mr. Burke was aware of the requirements of 37 C.F.R. § 1.56 to disclose to the Patent Office information known to him to be material to patentability of the '217 Patent.

**BOA Action**

89.     On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose the existence of the BOA Action during prosecution of the '217 Patent.

90.     Based on Mr. Burke's failure to disclose the existence of the BOA Action during prosecution of the '217 Patent, the '217 Patent is unenforceable due to inequitable conduct. Specifically, under the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit in *Exergen*, 575 F.3d 1312:

(a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

Mr. Burke knew of the BOA Action, including through his position at EPC.   On information and belief, Mr. Burke deliberately withheld the existence of the BOA Action during prosecution of the '217 Patent.

(b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

MPEP § 2001.06(c) states that "[w]here the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the  attention of the U.S. Patent and Trademark

Office."  Accordingly, because EPC's Parent Patent was at issue in the BOA Action and because the EPC Parent Patent and the '217 Patent are related and involve the same subject matter, the BOA Action is relevant to all claims, and all limitations in those claims, of the '217 Patent.

(c)  "**Where** in th[e] references the material information is found" (*id.*)

Per MPEP § 2001.06(c), the entirety of the BOA Action is material.  In addition, specific examples of material information from the BOA Action include, without limitation:

- The Court's May 27, 2009 ruling that EPC's Parent Patent is invalid for lack of patentable subject matter.

- Prior Art disclosed during the BOA action and Bank of America's allegations of invalidity of EPC's Parent Patent, including but not limited to the Cohen Patent and the McCarthy Patent, both of which were the subject of Bank of America's motion for summary judgment of unenforceability.

- Bank of America's allegations of unenforceability of EPC's Parent Patent based on EPC's inequitable conduct before the Patent Office in prosecuting EPC's Parent Patent.

(d)  "**'Why'** the withheld information is material and not cumulative" (*id.*) or why the misrepresented information is material

Per MPEP § 2001.06(c), the entirety of the BOA Action is material.  But for Mr. Burke's failure to disclose the BOA Action to the Examiner, the Examiner would not have allowed one or more of the claims of the '217 Patent.  *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

(e)  "**'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

Had the Examiner known about the BOA Action, the Examiner would have used such information to find one or more claims of the '217 Patent unpatentable, anticipated by prior art disclosed during the BOA Action, and/or rendered obvious by prior art disclosed during the

BOA Action.

 (f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id*. at 1327)

The omission committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date the application for the '217 Patent was filed and continuing until the '217 Patent issued: August 8, 2009 through September 27, 2011.

 (g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id*. at 1328)

Mr. Burke knew of the BOA Action including through his position at EPC and his involvement in the BOA Action.

 (h) "Specific **intent** to deceive the PTO" (*id*. at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO. Mr. Burke's specific intent to deceive the PTO when failing to disclose the BOA Action during prosecution of the '217 Patent is supported by, among other things, 1) the fact that Mr. Burke knew about the BOA Action; 2) that as of May 27, 2009, before the application for the '217 Patent was filed, the Court in the BOA Action found EPC's Parent Patent invalid for lack of patentable subject matter; and 3) that, on information and belief, Mr. Burke wanted the application for the '217 Patent, which is related to EPC's Parent Patent, to issue as a patent in order to, *inter alia*, seek licensing fees therefor.

**Cohen Patent**

91. On information and belief, Mr. Burke, in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 and with specific intent to deceive the Examiner, failed to disclose during prosecution of the '217 Patent U.S. Patent No. 4,750,119 ("the Cohen Patent").

92. Based on Mr. Burke's failure to disclose the Cohen Patent during prosecution of

the '217 Patent, the '217 Patent is unenforceable due to inequitable conduct.  Specifically, under

the pleading requirements set forth by the United States Court of Appeals for the Federal Circuit

in *Exergen*, 575 F.3d 1312:

> (a) "**[W]ho** both knew of the material information and deliberately withheld or misrepresented it" (*Exergen*, 575 F.3d at 1329)

On information and belief, Mr. Burke knew of Cohen Patent.  On information and belief,

Mr. Burke deliberately withheld the existence of the Cohen Patent during prosecution of the '217

Patent.

> (b) **What** "claims, and which limitations in those claims, the withheld references [or misrepresentation] are relevant to" (*id.*)

The Cohen Patent is relevant to at least claim 1 of the '217 Patent.  The Cohen Patent

discloses or renders obvious each limitation of claim 1, including:

> 1. A system for accumulating credits from a customer account belonging to the customer and managed by an institution and placing the credits into a provider account, comprising:
>
> an information processor;
>
> said information processor including a data store with data identifying the customer, the rounding determinant, the managed institution, and the account;
>
> said data store including machine readable instructions authorizing the processor to access and read the customer account;
>
> said data store including machine readable instructions to calculate rounders after receiving a plurality of payment transactions from the read customer account and to calculate an excess based on the rounders;
>
> said data store including machine readable instructions to withdraw the excess from the customer account; said data store including machine readable instructions to transfer the withdrawn excess to the provider account.

> (c) "**Where** in th[e] references the material information is found" (*id.*)

The material information can be found throughout the Cohen Patent including but not

limited to the Cohen Patent at Abstract ("The purchasing system with a rebate feature…
computes and reports a rebate which is due in the future to each subscriber-purchaser… The
rebate is based upon cost of the individually selected goods and services and the rebate
factor…"); Tables I, III (describing data associated with transaction); 5:10-19 (describing Table
I); 5:64-68 (describing Table III); Fig. 4 (describing data associated with transaction); 6:14-24
(describing Fig. 4); 2:35-43 ("This computer program also includes means for inputting an
updated rebate factor at the end of the fiscal year…"); 7:20-32 ("[A]n updated rebate factor is
input into the purchasing system…  [T]he program can compute the individual annuity contract
rebate values for each subscriber-purchaser based upon that purchaser's total purchases versus all
the purchases made through the transactional system (i.e., the percentage of individual to the
total goods and services bought by all purchasers."); Claim 1 ("means, coupled to the correlation
means and the factor input means, for computing and reporting a rebate, due in the future, to
each individual subscriber-purchaser at a predetermined future date from said future benefit
guarantor to each said subscriber-purchaser based upon the cost of the individually selected good
and service and said rebate factor."); 4:36-62 ("At the end of each accounting quarter, the system
generates a quarterly report for each subscriber-purchaser showing the total individual purchases
made during the quarter and an estimated rebate..."); Abstract ("[T]he system further instructs
the guarantor to issue individual future guaranteed rebate contracts to each purchaser-subscriber
based upon the total rebates or total purchases over the accounting period."); Figures 1a-b, 2-4;
and Claims 2-4.

(d) **"'Why'** the withheld information is material and not cumulative" (*id.*) or why the
misrepresented information is material

The Cohen Patent is material and not cumulative because but for the failure to disclose
the Cohen Patent to the Examiner, the Examiner would not have allowed one or more claims of

the '217 Patent including at least claim 1.  *See Therasense*, 649 F.3d 1276, 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.").

   (e) "**'How'** an examiner would have used [the] information in assessing the patentability of the claims (*Exergen*, 575 F.3d at 1329-1330).

On information and belief, had the Examiner known about the Cohen Patent, the Examiner would have used such information to find one or more claims the '217 Patent anticipated and/or rendered obvious by the Cohen Patent under 35 U.S.C. §§ 102 and/or 103.

   (f) The "**when**... of the material misrepresentation or omission committed before the PTO" (*id.* at 1327)

The omission of the Cohen Patent committed before the PTO by Mr. Burke occurred during the entirety of the period beginning on the date the application resulting in the '217 Patent was filed until the '217 Patent issued:  August 8, 2009 – September 27, 2011.

   (g) **Knowledge** "of the withheld material information or of the falsity of the material misrepresentation" (*id.* at 1328)

On information and belief, Mr. Burke knew of the Cohen Patent and its materiality to the '217 Parent Patent at least through his role in EPC and involvement in the BOA Action and other means.

   (h) "Specific **intent** to deceive the PTO" (*id.* at 1327).

On information and belief, Mr. Burke acted with specific intent to deceive the PTO.  Mr. Burke's specific intent to deceive the PTO when failing to disclose the Cohen Patent during prosecution of the '217 Patent is supported by, among other things, 1) the fact that Mr. Burke knew about the Cohen Patent and its materiality; and 2) that, on information and belief, Mr. Burke wanted the application for the '217 Patent, which is related to EPC's Parent Patent, to issue as a patent in order to, *inter alia*, enforce it against others and seek licensing fees therefor.

**COUNT IX:  DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S.
PATENT NO. 8,025,217 DUE TO INEQUITABLE CONDUCT THAT OCCURRED
DURING THE PROSECUTION OF THE EPC PARENT PATENT
(U.S. PATENT NO. 6,112,191)**

93.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20 and 27-48 of its Counterclaims.

94.     The '217 Patent, which claims to be a continuation of the '849 Patent which claims to be a continuation of the EPC Parent Patent, and claims priority to the EPC Parent Patent, is unenforceable as a result of the inequitable conduct that occurred during prosecution of the EPC Parent Patent.

**COUNT X:  DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S.
PATENT NO. 8,025,217 DUE TO INEQUITABLE CONDUCT THAT OCCURRED
DURING THE PROSECUTION OF U.S. PATENT NO. 7,575,849**

95.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20 and 49-64 of its Counterclaims.

96.     The '217 Patent, which claims to be a continuation of the '849 Patent and claims priority to the '849 Patent, is unenforceable as a result of the inequitable conduct that occurred during prosecution of the '849 Patent.

**COUNT XI: DECLARATORY JUDGMENT OF UNENFORCEABILITY DUE TO
PATENT MISUSE OF U.S. PATENT NO. 8,025,217**

97.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20 and 75-96 of its Counterclaims.

98.     EPC has committed patent misuse through its enforcement of the '217 Patent, which it knew to be invalid and unenforceable as set forth in paragraphs 7-20 and 75-96 of Wells Fargo's Counterclaims.  By asserting a patent that EPC knew, or should have known, to be invalid and unenforceable, EPC has impermissibly broadened the physical and/or temporal scope

of the '217 Patent and has done so in a manner that has anticompetitive effects.

99.    An actual case or controversy exists between Wells Fargo and EPC as to whether the '217 Patent is unenforceable for patent misuse.

100.    A judicial declaration is necessary and appropriate so that Wells Fargo may ascertain its rights regarding the '217 Patent.

## COUNT XII: FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

101.    Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20, 27-64, and 75-96 of its Counterclaims.

102.    This claim arises under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201 *et seq*.

103.    Pursuant to Fla. Stat. § 501.204, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

104.    Pursuant to Fla. Stat. § 501.202, one of the stated purpose of the FDUTPA is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

105.    Wells Fargo is a legitimate business enterprise that comes within the protection of the FDUTPA.

106.    EPC has violated Fla. Stat. § 501.204 through its enforcement of the '849 and '217 Patents, which it knew to be invalid and unenforceable as set forth in paragraphs 7-20, 27-64, and 75-96 of Wells Fargo's Counterclaims, and through its publicizing of such false and baseless patent infringement claims through its website www.everypennycounts.com.   By

asserting patents against Wells Fargo that EPC knew, or should have known, to be invalid and unenforceable, and publicizing those bad faith assertions, EPC has committed unfair, unconscionable, and/or deceptive acts in Florida, in violation of the FDUTPA.

107.     EPC's violations of the FDUTPA have caused Wells Fargo damages and aggrievement.

### COUNT XIII: CALIFORNIA BUSINESS & PROFESSIONS CODE

108.     Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20, 27-64, and 75-96 of its Counterclaims.

109.     This claim arises under the California Business & Professions Code § 17200 *et seq.*

110.     EPC's conduct has constituted unfair, unlawful and/or fraudulent business acts or practices under Cal. Bus. & Prof. Code § 17200 *et seq.*, including EPC's enforcement of the '849 and '217 Patents, which it knew to be invalid and unenforceable as set forth in paragraphs 7-20, 27-64, and 75-96 of Wells Fargo's Counterclaims, in addition to EPC's publicizing its false and baseless patent infringement claims through its website www.everypennycounts.com.   By asserting patents against Wells Fargo that EPC knew, or should have known, to be invalid and unenforceable, and publicizing those bad faith assertions, EPC has committed unfair, unlawful and/or fraudulent business acts or practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*

111.     On information and belief, EPC's conduct has caused anticompetitive effects in the market for banking products with savings functionality.

112.     On information and belief, EPC's conduct has threatened companies participating and entering the relevant banking product market, thereby decreasing competition in that market

and causing Wells Fargo and others participating in or wishing to enter that market to undertake substantial expenses.

113.    EPC's above-described unfair, unlawful and/or fraudulent business practices have caused Wells Fargo to suffer economic injuries.

114.    Wells Fargo is a national banking association headquartered in San Francisco, California, and EPC's conduct has caused Wells Fargo to suffer economic harm in California. Wells Fargo's injuries include increased costs, among other injuries. For example, EPC's illegal conduct has caused Wells Fargo to expend substantial sums in defense of EPC's assertions of the '849 and '217 Patents.

<u>**COUNT XIV: NORTH CAROLINA UNFAIR AND DECEPTIVE
TRADE PRACTICES ACT**</u>

115.    Wells Fargo restates and incorporates by reference its allegations in paragraphs 7-20, 27-64, and 75-96 of its Counterclaims.

116.    This claim arises under the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C.G.S. §§ 75-1.1 *et seq*.

117.    Pursuant to N.C.G.S. §§ 75-1.1, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

118.    Wells Fargo is a national banking association with offices located in Charlotte, North Carolina.

119.    EPC has violated N.C.G.S. §§ 75-1.1 through its enforcement of the '849 and '217 Patents, which it knew to be invalid and unenforceable as set forth in paragraphs 7-20, 27-64, and 75-96 of Wells Fargo's Counterclaims, and through its publicizing of such false and baseless patent infringement claims through its website www.everypennycounts.com.   By

asserting patents against Wells Fargo that EPC knew, or should have known, to be invalid and unenforceable, and publicizing those bad faith assertions, EPC has committed unfair and/or deceptive acts or practices in or affecting commerce in violation of the UDTPA.

120.    Wells Fargo has suffered an actual injury as a proximate result of EPC's violations of the UDTPA.

121.    Accordingly, pursuant to N.C.G.S. §§ 75-1.1 and 75-16, Wells Fargo is entitled to recover from EPC such damages as it may prove at trial and have those damages trebled.

### COUNT XV: NORTH CAROLINA COMMON LAW UNFAIR COMPETITION

122.    Wells Fargo restates and incorporates by reference its allegations in paragraphs 115-121.

123.    By its conduct as alleged in paragraphs 115-121, EPC has engaged in unfair methods of competition in violation of the common law of the State of North Carolina.

124.    As a direct, proximate, foreseeable, and intended result of EPC's misconduct, Wells Fargo has suffered economic damages.   Wells Fargo's economic damages include increased costs, among other injuries. For example, EPC's illegal conduct has caused Wells Fargo to expend substantial sums in defense of EPC's assertions of the '849 and '217 Patents.

### RESERVATION OF ADDITIONAL CLAIMS AND DEFENSES

125.    In accordance with the Federal Rules of Civil Procedure and other applicable provisions, Wells Fargo reserves the right to assert, by pleading or motion, additional applicable claims and/or defenses at law or in equity.

### PRAYER FOR RELIEF

WHEREFORE, Wells Fargo prays for judgment in its favor and against EPC as follows:

(a)    Declaring that Wells Fargo has not infringed and is not presently infringing any claims of the '849 and '217 Patents;

(b)     Declaring that the claims of the '849 and '217 Patents are invalid;

(c)     Declaring that the claims of the '849 and '217 Patents are unenforceable;

(d)     Holding this case to be exceptional and awarding Wells Fargo its attorneys' fees under 35 U.S.C. § 285;

(e)     Awarding Wells Fargo its costs pursuant to Fed. R. Civ. P. 54(d);

(f)     Awarding Wells Fargo actual damages, attorneys' fees, costs, and other relief authorized by the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201 *et seq.*;

(g)     Awarding Wells Fargo all relief authorized by the California Business & Professions Code § 17200 *et seq.*;

(h)     Awarding Wells Fargo treble damages, attorneys' fees, and other relief authorized by the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C.G.S. §§ 75-1.1 *et seq.*;

(i)     An accounting and/or supplemental damages for all damages to Wells Fargo occurring after any discovery cutoff and through the Court's decision regarding any relief to be granted on Wells Fargo's Counterclaims;

(j)     Awarding such other relief as this Court deems proper and just.

## **<u>DEMAND FOR JURY TRIAL</u>**

Wells Fargo requests a trial by jury of any issues so triable, including Wells Fargo's

affirmative defenses and counterclaims.

Dated:  June 12, 2012                              Respectfully submitted,

                                                                  /s/ Scott D. Feather
                                                   _____
                                                   Charles M. Harris (FBN 0967459)
                                                   Scott D. Feather (FBN 0068740)
                                                   **Trial Counsel**
                                                   TRENAM, KEMKER, SCHARF, BARKIN,
                                                   FRYE, O'NEILL & MULLIS
                                                   101 East Kennedy Blvd
                                                   Suite 2700
                                                   P.O. Box 1102
                                                   Tampa, FL 33602

(813) 223-7474 (Telephone)
(813) 229-6553 (Facsimile)
charris@trenam.com
sfeather@trenam.com

*and*

Steven Cherny (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800 (Telephone)
(212) 446-4900 (Facsimile)
steven.cherny@kirkland.com

Amanda Hollis (*pro hac vice*)
Jared Barcenas (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000 (Telephone)
(312) 862-2200 (Facsimile)
amanda.hollis@kirkland.com
jared.barcenas@kirkland.com

*Attorneys for Defendant*
*WELLS FARGO BANK, N.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2012, I electronically filed the foregoing **WELLS FARGO BANK'S ANSWER TO EPC'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND**, with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

/s/ Scott D. Feather

Scott D. Feather (FBN 0068740)
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS
101 East Kennedy Blvd
Suite 2700
P.O. Box 1102
Tampa, FL 33602
(813) 223-7474 (Telephone)
(813) 229-6553 (Facsimile)
sfeather@trenam.com

*Attorney for Defendant*
*WELLS FARGO BANK, N.A.*