UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVERY PENNY COUNTS, INC.,

    Plaintiff,

v.                                                CASE NO.: 8:11-cv-2826-T-23TBM

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

**ORDER**

Every Penny Counts (EPC) sues (Doc. 16) Wells Fargo for infringing U.S. Patents 7,571,849 and 8,025,217.  The patents are quite similar, and each describes – through long sections of identical text – a system of automated saving or automated charitable giving.  For example, the dollars and cents amount of a purchase by a bank customer with a credit card is "rounded up" to the next dollar, and the difference between the dollars and cents amount of the purchase and the dollar to which the amount is "rounded up" is withdrawn from the bank account of the bank customer ("the customer account") and deposited into a recipient account ("the provider account") for personal saving or charitable giving.  Disputing the meaning of several terms, the parties submit *Markman* briefs.  (Docs. 58, 59, 63, 64)

**CLAIM CONSTRUCTION**

*1. '849 Patent – "Rounder Amount"*

Wells Fargo defines "rounder amount" as the "amount of excess funds produced through rounding, i.e., produced by applying a rounder function to a

transaction amount and then subtracting the coin amount[1] of the transaction amount from the result." (Doc. 59 at 5-6 (footnote added))  EPC defines "rounder amount" as the "amount of excess payment produced by applying the determinant[2] to the account entry." (Doc. 63 at 3, 9 (footnote added))  "The parties agree that 'rounder amount' is 'excess funds' or 'excess payment,' but [the parties] dispute whether a 'rounder amount' is produced through [only] rounding, as Wells Fargo contends, or whether 'rounder amount' does not [necessarily] involve rounding, as EPC contends." (Doc. 59 at 6; *accord* Doc. 63 at 3)

"[T]he words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted).  Wells Fargo argues, convincingly and without objection, that the ordinary and customary meaning of "rounder amount" entails rounding.  EPC argues that the patent expands the concept of rounding to include, not just "conventional" rounding, but an additur (i.e., "a fixed dollar amount [that] is added such as $1 or $2") and a percentage of the transaction amount (i.e., "where the amount added is a percentage of the transaction amount"). (Doc. 63 at 4)  For example, suppose the transaction amount is $10.20.  According to EPC, the invention (1) can round to the next dollar and deposit 80¢ into the provider account,

---

[1] The "coin amount" is the cents portion of a transaction amount; e.g., a $14.56 transaction amount has a coin amount of $0.56. '849 patent, col. 13, ll. 6-7 ("The coin amount is the presence of coins in the face amount, i.e. check for $10.14.").

[2] "Determinant" is discussed later in this order.

(2) can deposit a $1.00 additur into the provider account, or (3) can deposit 10% of the transaction amount (i.e., $1.02) into the provider account.

Although "rounder amount," by the plain and ordinary meaning of "rounding," entails rounding, not additurs or percentages, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

To expand "rounder amount" beyond rounding, EPC cites the patent's definition of rounder transaction (not the definition of rounder amount). "Rounder transaction" is defined as "the numerical function applied against the face amount or the entry itself, i.e., $1.00, $3.00, *2%, or a specific number $1.50* to create excess funds." '849 patent, col. 13, ll. 2-3 (emphasis added). EPC's argument for the expansion of "rounding" relies entirely on the definition's use of 2% (a percentage) and $1.50 (an additur) as examples of a rounder transaction. In short, EPC's argues that the presence of the examples is inexplicable unless the patent's use of "rounding" is understood to include a percentage of the transaction amount and an additur.

EPC's argument that "rounder amount" implicates additurs is inconsistent with the claims. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (internal quotation marks omitted). Each '849-patent claim encompasses a "method for performing a payment transaction, the method

- 3 -


comprising: . . . *generating* a rounder amount *based on the transaction amount* and the determinant . . . ." '849 patent, col. 17, ll. 53-54 (emphasis added). The claims establish that a rounder amount is claimed only if "generat[ed] . . . based on the transaction amount." If an additur were used, the supposed "rounder amount" equals the additur – no need to "generat[e]" the rounder amount exists and the additur is not derived from, dependent on, a function of, or otherwise "based on the transaction amount." (Doc. 58 at 10 (describing the additur as "fixed")) The additur, to which the rounder amount is equal, is not "based on" the transaction amount because the additur and the rounder amount remain constant despite a change in the transaction amount. For example, EPC's *Markman* brief contains a sample additur of $1.00. Despite the sample transaction amount of $1.70, the additur remains $1.00; no change in the transaction amount affects the $1.00. Thus, the claims exclude the use of an additur. *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1343-44 (Fed. Cir. 2003) (rejecting a party's proposed construction because the "proposed construction is simply not consistent with the language of the claims"); *see also Johnson & Johnston Associates Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("[W]hen a patent drafter discloses but declines to claim subject matter, . . . [the drafter] dedicates that unclaimed subject matter to the public.").

In contrast to EPC's argument for claiming an additur, EPC's argument that "rounder amount" includes a percentage of the transaction amount is consistent with

the claims. A rounder amount that is calculated by multiplying a percentage by a transaction amount is "generated" (by the multiplication), and the "generated" rounder amount is "based on the transaction amount" because the product yielded by the multiplication changes with the transaction amount. However, "[t]he plain and ordinary meaning of claim language controls [e.g., 'rounder amount' entails rounding], unless that meaning . . . is overcome by a special definition that appears in the intrinsic record with reasonable clarity and precision. Vagueness and inference cannot overcome an ordinary meaning of a claim term . . . ." *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000) (citation omitted).

Although the definition of "rounder transaction" identifies 2% as an example, the patent's expansion of "rounding" is not reasonably clear. The definition of "rounder transaction" and other definitions in the patent are drafted so poorly that the terms are nearly impossible to understand.[3] Worse yet, the patent lacks a definition for many terms that are confusingly similar. For example, although the patents (poorly) define "rounder amount" and "rounder transaction," the patents

---

[3] The March 5, 2014, order offers a sample of the '217 patent's staggering number of errors. (Doc. 95 at 7-8) The '849 patent is no different. Clearly, no one – not even the patent examiner – fully read either patent before issuance. Additional errors, which are not discussed in the March 5, 2014, order, are in Figures 9C and columns 14 of the '849 patent and '217 patents. Columns 14 discuss the invention's application to a deposit or interest. However, the text purports to "regard [] deposits or fee income" and, later, a "deposit or interest fee." Simultaneously, the text purports to describe the steps depicted in Figure 9C, but Figure 9C describes the steps for a "debit or withdrawal." All three statements are incorrect; the text and Figure 9C should purport to describe the steps for processing a deposit or interest. The text's error is (presumably) a result of carelessness and confusion. The cause of the figure's error is more difficult to diagnose – perhaps forgetfulness or a combination of laziness and deception. Regardless of the cause, rather than depicting the steps for a deposit or interest, Figure 9C is a slightly-manipulated but functionally identical version of Figure 9B. (Figure 9C has a new title and the steps are re-numbered.)

employ, not only those terms, but "rounder," "rounder number," "rounder percentage," "rounder contribution," "rounding determinant," "rounder instructions," "rounder account contribution," "rounder transaction contribution," "rounder system," "rounder account," "rounder activity," and "total rounder amount," each without an explicit definition.  In short, the patent's disconcerting combination of an inadequate or confusing definition for some terms and entire lack of definition for other terms creates an inadequately differentiated mass of similar, specialized terms and easily suffices to defeat the patentee's attempt to counter-intuitively define rounding.  *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005) ("[The patent] fails to redefine [the patent term] . . . in clear enough terms to justify such a counterintuitive definition."); *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1354 (Fed. Cir. 2003) ("[T]he patentee's lexicography must, of course, appear with reasonable clarity, deliberateness, and precision before it can affect the claim." (internal quotation marks omitted)); *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000) ("Vagueness and inference cannot overcome an ordinary meaning of a claim term . . . .").

However, even after straining to decipher the patent's definitions of "rounder transaction" and "rounder amount," the objective reader finds that the patent's passing mention of a percentage is too inconspicuous and insufficiently declaratory. *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991), explains:

> [Patent law] requires that an inventor particularly point out and
> distinctly claim the subject matter of his invention. It would run

> counter to this statutory provision for an applicant for patent to expressly state throughout his specification and in his claims that his invention includes [a limitation, e.g., rounding,] and then be allowed to avoid that claim limitation in a later infringement suit by pointing to one paragraph in his specification stating an alternative that lacks that limitation, and thus interpret the claim contrary to its plain meaning. Such a result would encourage an applicant to escape examination of a more broadly-claimed invention by filing narrow claims and then, after grant, asserting a broader scope of the claims based on a statement in the specification of an alternative never presented in the claims for examination.

(citations omitted).

Finally, even if the patent's counterintuitive expansion of rounding were sufficiently clear and sufficiently conspicuous, the expansion is incompatible with EPC's construction of "rounder amount." EPC argues that a "rounder amount" can equal a percentage of a transaction amount. Using an example, EPC states that a 10% rounder transaction and a $1.70 transaction amount generate a 17¢ rounder amount because 10% of $1.70 is 17¢, or expressed symbolically, $0.10 \times \$1.70 = \$0.17$. (Doc. 58 at 10) Similarly, using EPC's construction of "rounder amount," if the rounder transaction is 10% and the transaction amount is $10.20, the rounder amount is $1.02 because 10% of $10.20 is $1.02, or expressed symbolically, $0.10 \times \$10.20 = \$1.02$. However, these examples and EPC's construction of "rounder amount" are incompatible with the patent. The patent defines "[t]he rounder amount" as "the amount of excess funds produced by applying the rounder transaction to the entry minus the coin amount." '849 patent, col. 13, ll. 8-11. The patent defines "[t]he rounder transaction" as "the numerical function applied against

the face amount or the entry itself,[4] i.e., $1.00, $3.00, 2%, or a specific number $1.50 to create excess funds." '849 patent, col. 13, ll. 1-3 (footnote added). Again, suppose that the transaction amount is $10.20 (which gives a coin amount of 20¢) and suppose that the rounder transaction is 10%. Applying the patent's definition, the rounder transaction is $1.02 because 10% of $10.20 is $1.02, or expressed symbolically, 0.10 × $10.20 = $1.02. Applying the patent's definition of "rounder amount" – which is based on the rounder transaction – the rounder amount is the excess funds generated by subtracting 20¢ from the sum of $10.20 and $1.02, or expressed symbolically, ($10.20 + $1.02) – $0.20.[5] This calculation, which results in $11.02, generates 82¢ in excess of $10.20. Accordingly, using the patent's definitions, the rounder amount is 82¢. However, as already discussed, EPC argues that if the rounder transaction is 10% and the transaction amount is $10.20, the rounder amount is $1.02, not 82¢ (because 10% of $10.20 is $1.02, or expressed symbolically, 0.10 × $10.20 = $1.02). Thus, EPC's interpretation of "rounder amount" is incompatible with the patent.

---

[4] The "face amount" and the "entry" are identical. *Compare* '849 patent, col. 14, ll. 61-62 ("[T]he rounder amount is added to the face amount to determine the total withdrawal"), *with* '849 patent, col. 16, ll. 57-58 ("[T]he rounder amount is added to the entry amount to determine the total withdrawal.").

[5] The patent's definition of "rounder amount" is "the amount of excess funds produced by applying the rounder transaction to the entry minus the coin amount." The definition is ambiguous because "rounder amount" could mean either "the amount of excess funds produced by applying the rounder transaction to the entry [and subtracting] the coin amount [from the sum]" (e.g., ($10.20 + $1.02) – $0.20) or "the amount of excess funds produced by applying the rounder transaction to [the difference created by] the entry minus the coin amount" (e.g., $10.20 + ($1.02 – $0.20)). This order uses the first definition. However, even if the second definition is used, EPC's interpretation of "rounder amount" remains in conflict with the patent; e.g., ($10.20 + $1.02) – $0.20 = $10.20 + ($1.02 – $0.20) = $11.02.

Recognizing the problem, EPC argues that the patent defines "rounder amount" (broadly) as "the amount of excess payment" and that the broad definition should control because the narrow definition is intended to define "[t]he rounder amount" in only the preferred embodiment, i.e., the "conventional" rounding embodiment. For support, EPC cites a portion of the patent's definitions section. In whole, the section states:

> The face or entry amount means the actual amount of the check/ATM withdrawal or credit/debit card charges prior to any rounder activity.
>
> The rounder transaction is the numerical function applied against the face amount or the entry itself, i.e., $1.00, $3.00, 2%, or a specific number $1.50 to create excess funds. In the preferred embodiment this will be a whole dollar amount such as $1.00, $5.00, $10.00, etc. added to the entry.
>
> The coin amount is the presence of coins in the face amount, i.e. check for $10.14.
>
> The rounder amount is the amount of excess funds produced by applying the rounder transaction to the entry minus the coin amount, i.e. $10.14 using a $1.00 rounder will produce $0.86 as the rounder amount of excess funds.
>
> The total withdrawal will be the rounder amount plus the entry amount which will be debited against the checking account or credit card balance to determine the new account balance.

'849 patent, col. 12, 13, ll. 65-67, 1-15. Citing one sentence in the definition of rounder transaction (not rounder amount), EPC argues that the patent's definition of rounder amount applies to only the preferred embodiment. However, EPC's argument is flawed.

First, by default, if a patentee clearly attempts to define a word and the definition is not explicitly limited to a certain embodiment, the definition applies to each embodiment. For example, *Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharmaceutical Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004), adopts a patent's (unusually narrow) definition of "solubilizer" despite the patentee's argument that the definition applies to only the preferred embodiment. *Astrazeneca* states, "We might agree [with the patentee] if the specification stated, for example, '*a solubilizer* suitable for the preparations according to the invention,' but in fact, the specification definitively states '*the solubilizers* suitable for the preparations according to the invention.'" Similarly, the '849 patent definitively states, "*The rounder amount is* the amount of excess funds produced by applying the rounder transaction to the entry minus the coin amount . . . ." '849 patent, col. 13, ll. 8-11 (emphasis added).

Second, EPC is correct that a sentence can qualify portions of the patent by employing words that establish the limitation. The patent effectively demonstrates this technique several times. For example, the patent clearly explains – in a stand-alone paragraph elsewhere in the patent – that subsequent discussion applies when the rounder transaction is $1.00. The paragraph–sentence states, "The following will assume the application of a $1.00 rounder transaction." '849 patent, col. 13, ll. 56-57. Elsewhere, the patent offers another explicit, stand-alone sentence that limits subsequent discussion. '849 patent, col. 13, ll. 56-57 ("The following information will provide clarity for the steps that will be detailed in FIG. 9A-E and

FIG. 10A-E."). In contrast, the sentence cited by EPC states, "In the preferred embodiment this [the rounder transaction] will be a whole dollar amount such as $1.00, $5.00, $10.00, etc. added to the entry." This sentence – which is included in the paragraph defining "rounder transaction" – identifies the preferred embodiment of a rounder transaction. The sentence utterly fails to limit the subsequent definitions to the preferred embodiment.

Third, the sentence's failure to qualify the subsequent definitions is corroborated by the subsequent definitions. No other definition – neither the definition of coin amount nor the definition of total withdrawal – is limited to a certain embodiment. If the "narrow" definition of rounder amount is limited to one embodiment, as EPC argues, the definition is the only definition in a list of five definitions that applies exclusively to one embodiment.

Fourth, in the definition of "rounder transaction," the 2% example appears among the $1.00 and $3.00 examples without any indication that the invention should handle the 2% example differently. *See* '849 patent, col. 13, ll. 1-3 ("The rounder transaction is the numerical function applied against the face amount or the entry itself, i.e., $1.00, $3.00, 2%, or a specific number $1.50 to create excess funds."). Accordingly, the patent cues the reader to process a percentage no differently.

As discussed above, the "narrow" definition of rounder amount contains no indication that the definition is limited to a preferred embodiment, and the patent affirmatively suggests that the definition is broadly applicable. Although this is sufficient to discredit EPC's argument, EPC's argument is further discredited by the inadequacies of the broad "definition."

First, "[t]o act as its own lexicographer, . . . the patentee must 'clearly express an intent' to redefine the term." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012) (stating further that "*clear lexicography*" is needed and that "a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning"); *accord Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) ("Absent express intent to impart a novel meaning, claim terms take on their ordinary meaning."). However, the broad "definition" fails to clearly express an intent to re-define "rounder amount." The broad "definition" is off-handedly written in the middle of a paragraph and is part of a larger sentence. In full, the sentence states, "The amount of excess payment called a rounder amount is then added to the face amount of the draft and the total number is then debited (as in withdrawals or account fees) or added (as in deposits or interest payments) to the account balance." '849 patent, col. 11, ll. 26-32. The patent's mid-paragraph broad "definition," which is part of a larger sentence, fails to express a clear intent to re-define the term. This failure is especially apparent when the "definition" is juxtaposed to the patent's explicit and purposeful definition (i.e., "The

rounder amount is . . . ."). Unlike the broad "definition," the "narrow" definition fully describes rounding[6] and is grouped with other definitions. Also, the broad "definition" fails to "clearly express an intent" to re-define rounder amount because the broad "definition" is compatible with rounding. If a patent broadly describes a term and if that description is compatible with the ordinary and customary meaning of the term, the description fails to re-define the term. For example, suppose a patent describes "watch" as "an object worn on the wrist." Although the "definition" might establish that – for purposes of the patent – a pocket watch is not a "watch," the "definition" fails to expand "watch" to include anything worn around the wrist (such as a bracelet). Despite the presence of the broad "definition," if the patent uses "watch," the term still denotes a timepiece (and not a bracelet). Accordingly, because the '849 patent's broad "definition" of a "rounder amount" is compatible with rounding, the "definition" fails to "clearly express an intent" to re-define rounder amount to include an operation that is not "rounding," understood in the ordinary sense.

Second, the broad "definition" of rounder amount – which is the "amount of excess payment" – fails for lack of precision. *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000) ("The plain and ordinary meaning of claim

---

[6] EPC argues that "a calculation that 'rounds' $10.00 up to $11.00[] is not [] true ['rounding'] in any conventional definition of the term." This argument is incoherent. "Rounding up" to the nearest whole dollar from $10.00 to $11.00 admittedly might occur less frequently than (say, approximately one in a hundred instances), but is wholly indistinguishable from, "rounding up" from any other amount less than $11.00 but greater than or equal to $10.00.

language controls, unless that meaning . . . is overcome by a special definition that appears in the intrinsic record with reasonable . . . precision."). Even EPC acknowledges that the rounder amount is not any amount of excess payment. Instead, the rounder amount is an excess payment generated by rounding or, perhaps, by adding an additur or a percentage. An excess amount that is calculated by some fourth means is – even according to EPC – not a rounder amount.[7] Thus, the broad "definition" – which applies to any excess amount, no matter how the amount is calculated – lacks the precision required by *Northern Telecom*.

Accordingly, a "rounder amount" is generated through rounding and includes neither an additur nor a percentage of the transaction amount.[8]

---

[7] For example, the invention could generate a "rounder amount" by finding the third root of the transaction amount.

[8] Although EPC chose otherwise, EPC could have argued that the example (in the patent) of the invention's application to a deposit demonstrates that the "narrow" definition of rounder amount applies to only the preferred embodiment. For simplicity, the parties' briefs and this order largely ignore the invention's application to a deposit. However, in a strikingly inefficient and error-filled use of words, the specification clarifies that the invention – by "revers[ing] the process" – can apply to a deposit. '849 patent, col. 14, ll. 10-40. In the usual circumstance – when the invention applies to a withdrawal – the rounder amount is added to the transaction amount, the addition of which increases the total withdrawal from the customer account. When the invention processes a deposit, the rounder amount is subtracted from the deposit, the subtraction of which reduces the total amount deposited into the customer account. The patent explains that in the preferred embodiment (1) the coin amount is removed from the check and is deposited into the provider account and (2) the remainder of the deposit is placed into the customer account. Thus, if a customer has a check for $10.14, the provider account receives 14¢ and the customer account receives the remaining $10.00. EPC could have argued that this example shows that the "narrow" definition of rounder amount is not global because the definition is incompatible with the deposit example. However, the argument fails. The definition of rounder amount explains that the rounder transaction is "applied" to the rounder entry and that the coin amount is subtracted from the result. The use of "applied" shows that the invention is not limited to adding the rounder transaction. (But even if the patent said "added," subtraction is achievable by adding a negative number.) In the $10.14 example, the rounder transaction is $0.00 and the coin amount is 14¢. Using the patent's definitions, the rounder transaction ($0.00) is subtracted from the transaction amount ($10.14) and the coin amount (14¢) is

(continued...)

- 14 -

*2. '849 Patent – "Determinant"*

Wells Fargo states that "determinant" is defined as a "rule to round that is applied to the transaction amount(s) to create an excess payment." (Doc. 59 at 15) EPC states that "determinant" is defined as a "fixed or variable predetermined calculation added to or subtracted from each account entry to create an excess payment." (Doc. 58 at 8)

"Importantly," the parties dispute whether "the form the 'determinant' may take is [] limited." (Doc. 58 at 8) EPC argues that the determinant can denote an additur, a percentage, or conventional rounding. However, the '849-patent claims explain that a rounder amount is "generat[ed] . . . based on the transaction amount and a determinant." *E.g.,* '849 patent, col. 17, ll. 53-54. Because the claims discuss the determinant in the context of only the rounder amount, which excludes an additur and a percentage, the determinant is similarly limited.

Also, Wells Fargo argues that the determinant is a "rule, not a number or result." (Doc. 64 at 15) EPC never explicitly argues that the determinant is a number and implicitly accepts that the determinant is a rule. (Doc. 58 at 10, which lists three putative examples of a determinant: "[r]ound up to the next dollar," "[a]dd 10%," and "[a]dd $1.00," each of which is a rule) Although Wells Fargo acknowledges

---

[8] (...continued)
subtracted from the difference. The calculation yields $10.00, and $10.14 exceeds $10.00 by 14¢. In accord with the patent's example, 14¢ is deposited into the provider account and $10.00 is deposited into the customer account. Thus, the "narrow" definition of rounder amount is compatible with the patent's deposit example.

- 15 -

EPC's implicit concession (Doc. 64 at 14 ("EPC's brief recognizes that a determinant is a rule.")), Wells Fargo insists that EPC's use of "calculation" in the proposed definition of "determinant" shows EPC's intent to define the determinant as a number, not a rule. EPC's silence in response to Wells Fargo's insistence is conspicuous.

Notwithstanding Wells Fargo's thrust and EPC's parry, the determinant is a number, not a rule. The specification never defines "determinant" and uses the term outside the claims only twice. The second use clarifies that the determinant is a number[9] – "Under this system the SP . . . instructs the bank or credit card issuer to *add or subtract a determinant* to each transaction . . . ." '849 patent, col. 11, ll. 53-58 (emphasis added). Because the determinant is "add[ed] or subtract[ed]" and because numbers, not rules, are added or subtracted, the determinant is a number, not a rule. Nonetheless, the two are closely related. For example, if the invention rounds up to the next dollar, the determinant is $1.00. (The transaction amount [say, $8.23] plus the determinant [say, $1.00] equals $9.23, minus the coin amount [23¢] equals $9.00, which is $8.23 rounded up to the nearest dollar.) Thus, although a determinant and a rule for rounding are closely related, the two are distinguishable.

---

[9] The first use fails to clarify whether the determinant is a rule or a number. *See* '849 patent, col. 11, ll. 36-39 ("The system is based on the ability to create excess funds by applying a determinant to the face amount or number of account entries, e.g. checks, ATM withdrawals, credit and debit drafts.").

*3. '217 Patent – "Rounding Determinant"*

The parties agree that "rounding determinant" – which is used in only the '217 patent – is identical to "determinant."

*4. '217 Patent – "Customer Account (Belonging to the Customer)"*

EPC defines "customer account" as "an account owned by the customer" and states that "customer account" and "customer account belonging to the customer" are synonymous. Wells Fargo's only criticism is that EPC's construction renders "belonging to the customer" – in the phrase "customer account belonging to the customer" – superfluous. In an attempt to explain what "belonging to the customer" contributes to "customer account," Wells Fargo states – without any justification – that "belonging to the customer" adds that the customer account is "[a]n account from which the transaction amount and the calculated excess are withdrawn." (Doc. 64 at 18) Wells Fargo's statement that this addition "gives full effect to all claim terms" is untenable. "Customer account belonging to the customer" is an account that the customer controls and that contains funds owned by the customer. "Customer account" is a shortened form of "customer account belonging to the customer."

*5. '217 Patent – "Provider Account"*

The parties agree that a provider account is an account selected to receive excess funds, but Wells Fargo adds that the customer must select the provider account. Wells Fargo's interpretation is incorrect because the interpretation renders

- 17 -

superfluous portions of the specification. *E.g.*, '217 patent, col. 3, ll. 54-57 ("The money is deposited into an 'open' network that will pool and then transfer the once fragmented funds onto [provider accounts] selected by the [subscriber]."); '217 patent, col. 17, ll. 29-31 ("[E]xcess overpayments [are] transferred . . . onto provider accounts selected by said subscriber/subscribers (SP).").

*6. '217 Patent – "Rounder"*

Wells Fargo's *Markman* briefs conflate "rounder" and "rounder amount" and define the terms identically.[10] (Doc. 64 at 5)  Although, to the casual observer, "rounder" and "rounder amount" appear synonymous, the '217 specification confirms that the patent uses the terms differently.  "Rounder" first appears in the definition of rounder amount; the patent states, "The rounder amount is the amount of excess funds produced by applying the rounder transaction to the entry minus the coin amount, i.e. $10.14 using a $1.00 rounder will produce $0.86 as the rounder amount of excess funds." '217 patent, col. 13, ll. 15-18.[11]  Although the definition of "rounder amount" and the paired example are drafted poorly, the example clarifies that "rounder" and "rounder amount" are distinct – in the example, the rounder is

---

[10] Wells Fargo's brief addresses primarily whether "rounder" and "rounder amount" are compatible with an additur or a percentage.

[11] Elsewhere, the patents use the same example but with even worse wording. *E.g.*, '849 patent, col. 14, ll. 58-60 ("For example, if the fee was for $10.14 a one dollar rounder add another $0.86 and the net withdrawal would be for $11.00.").

$1.00 and the rounder amount is $0.86. Accordingly, EPC has the better construction – "rounder" is synonymous with "determinant."[12]

## CONCLUSION

The disputed terms are construed as follows:

| Rounder Amount | The amount of excess funds generated by, first, adding or subtracting the determinant to or from the transaction amount and by, second, subtracting from the sum or the difference the coin amount |
|---|---|
| Determinant | A number added or subtracted – during the calculation of a rounder amount – to the transaction amount |
| Rounding Determinant | Determinant |
| Customer Account (Belonging to the Customer) | An account that the customer controls and that contains funds owned by the customer |

---

[12] Wells Fargo fails to raise two problems with EPC's construction. First, claim 1 of the '217 patent speaks of "calculat[ing] rounders." Although a determinant is not "calculated" in the ordinary sense of "to calculate," no plausible definition of rounder involves a calculation. The use of "calculate" in claim 1 (of the '217 patent) conflicts with the specification's use of "rounder." Accordingly, any construction of "rounder" must either conflict with the common meaning of "calculate" or conflict with the specification. Because the specification's examples are definitive and because – as this order and the March 5, 2013, order demonstrate – the patents are filled with oddities and errors, "rounder" is construed as synonymous with "determinant." *C.f. Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000) (holding that the specification can "overcome" the plain and ordinary meaning of a claim if "that [ordinary] meaning renders the claim unclear"). Second, because both "rounder" and "rounding determinant" are construed to mean "determinant," "rounder" and "rounding determinant" are construed as synonymous. However, the '217 patent uses each term in the same claim, which usually indicates that the terms are not synonymous. Nonetheless, "this is simply a case where the patentee used different words to express similar concepts, even though it may be confusing drafting practice." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1120 (Fed. Cir. 2004); *see also Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) ("Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper.").

- 19 -

| Provider Account | An account selected to receive excess funds |
| --- | --- |
| Rounder | Determinant |

ORDERED in Tampa, Florida, on March 18, 2014.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE