UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVERY PENNY COUNTS, INC.,
a Delaware corporation,

    Plaintiff,

v.                                       CASE NO. 8:11-cv-02826-SDM-TBM

WELLS FARGO BANK, N.A.,
f/k/a Wachovia Bank, N.A.

    Defendant.
_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR RECONSIDERATION OF
DENIAL OF PARTIAL SUMMARY JUDGMENT OF
INVALIDITY FOR INDEFINITENESS (DKT. 106)**

    Plaintiff EVERY PENNY COUNTS, INC. ("EPC"), by and through its undersigned counsel and pursuant to Local Rule 3.01(b), M.D. Fla. Local Rules, submits its Memorandum in Opposition to Defendant WELLS FARGO BANK, N.A., f/k/a WACHOVIA BANK, N.A.'s ("Wells Fargo's") Motion for Reconsideration of the Denial of Partial Summary Judgment of Invalidity for Indefiniteness (Dkt. 106) as set forth in the following Memorandum of Law.

**MEMORANDUM OF LAW**

    **I.**    *Nautilus, Inc. v. Biosig Instruments*

    When this Court denied Wells Fargo's Motion for Partial Summary Judgment as to Indefiniteness (Dkt. 60), it applied the proper legal standard at the time. Specifically, this Court correctly concluded that a patent claim is invalid only if the claim term is "insolubly ambiguous" and "not amenable to claim construction." *See* Order denying Motion for Partial Summary Judgment ("Order") (Dkt. 95) at 10. Thereafter, on June 2, 2014, the Supreme Court rendered its

decision in *Nautilus, Inc. v. Biosig Instruments, Inc.,* ___ U.S. ___, 134 S. Ct. 2120 (2014).  In *Nautilus*, the Supreme Court concluded that "the expressions 'insolubly ambiguous' and 'amenable to construction' permeate the Federal Circuit's recent decisions concerning §112, ¶2's requirement."  *Id.* at 2130.  The *Nautilus* Court reasoned that "[t]hose formulations can breed lower court confusion, for they lack the precision §112 ¶2 demands."  *Id.*  Thus, the *Nautilus* Court concluded "that such terminology can lead courts in the patent bar at sea without a reliable compass."  *Id.*

In lieu of the "insolubly ambiguous" or "amenable to construction" standard, the Supreme Court enunciated a new standard requiring "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Id.* at 2129.  In so doing, the *Nautilus* Court cautioned:

> The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unobtainable.  The standard we adopt accords with opinions of this Court stating that "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject matter."

*Id.* (Citations omitted).  Significantly, the *Nautilus* court did not reverse the Federal Circuit's conclusion of validity and definiteness in that case.  Instead, the *Nautilus* Court merely remanded the case to the Federal Circuit to apply the new "reasonable certainty" standard based on the facts presented.

While the legal standard applied by this Court in its March 5, 2014, Order (Dkt. 95) has changed, the ultimate outcome reached by this Court, *i.e.,* that the patents-in-suit are not invalid due to indefiniteness – remains sound.  Therefore, this Court should deny Wells Fargo's Motion for Reconsideration.

II.     **What *Nautilus* did not change**.

While the *Nautilus* Court reframed the legal standard for indefiniteness, much remains unchanged. "Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." *Praxair, Inc. v. A.T.M.I., Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008). Importantly, patents are presumed valid and patent claims must be construed to maintain validity. *See Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999); 35 U.S.C. §282(a). To overcome the presumption of patent validity, the claim of indefiniteness must be proven through clear and convincing evidence. *Accentra, Inc. v. Staples, Inc.*, 500 Fed. Appx. 922, 930 (Fed. Cir. 2013). The required proof of indefiniteness is an "exacting standard." *Haliburton Energy Services, LLC v. M-I LLC,* 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Where two possible interpretations of a claim term exist, a claim is not indefinite. Instead, the issue is one of claim construction. *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996); *Modine Mfg. Co. v. U.S. Int'l Trade Cmm'n*, 75 F.3d 1547, 1557 (Fed. Cir. 1996). ("When claims are amenable to more than one construction, they should when reasonably possible be interpreted to preserve their validity.") Further, a claim term does not require an antecedent basis if its meaning is determinable from implication or is reasonably ascertainable. *Haliburton Energy Services, LLC.* 514 F.3d at 1249. Thus, where claims were not rejected for lacking an antecedent basis for prosecution, this factor weighs against defining of indefiniteness. *See Energizer Holdings, Inc. v. International Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006). Indeed, an antecedent basis may exist by implication. *See Slim Fold Mfg. Co., Inc. v. Kinkead Industries, Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987).

III.     **What is "Reasonable Certainty?**

When establishing the new "reasonable certainty" standard of indefiniteness, the *Nautilus* Court reconciled concerns that "tug in opposite directions." *Nautilus, Inc.*, 134 S. Ct. at 2129.

> On the one hand, the definiteness requirement must take into account the inherent limitations of language. Some modicum of uncertainty, the Court has recognized, is the "price of insuring the appropriate incentives for innovation." One must bear in mind, moreover, that patents are "not addressed to lawyers, or even to the public generally" but rather to those skilled in the relevant art.
>
> At the same time, a patent must be precise enough to afford clear notice of what is claimed thereby 'appris[ing] the public of what is still open to them.' Otherwise there would be '[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.' And absent a reasonable definiteness check, we are told patent applicants face powerful incentives to inject ambiguity into their claims. Eliminating that temptation is in order, and 'patent drafter is in the best position to resolve ambiguity in . . . patent claims.'

*Id.* at 2128-29. While proclaiming the new standard as requiring a patent's claims, "viewed in light of specification and prosecution history, [to] inform those skilled in the art about the scope of the invention with reasonable certainty," the *Nautilus* Court did little to explain the application of this "reasonable certainty" standard. This, of course, begs the question of how and when is one skilled in the art informed about the scope of the invention with "reasonable certainty"?

In the two months since the *Nautilus* decision, the lower courts charged with initially applying this new standard seemed to have added little paint to the canvas. However, in *In re Maxim Integrated Products, Inc.,* 2014 W.L. 3696137 (W.D. Pa. July 23, 2014), the Court considered at length the *Nautilus* decision and concluded that the Court "need[ed] to answer the definiteness question from the viewpoint of one skilled in the art at the time of the invention." *Id.* at *6. Further, the *In re Maxim Integrated Products, Inc.* Court concluded that "close questions of indefiniteness must be resolved in favor of the patentee," even after *Nautilus. Id.* at *9 (*quoting BanCorp Services, LLC. v. Hartford Life Insurance Co.*, 359 F.3d 1367 (Fed. Cir.

4

2004). Thus, "[w]hen the evidence is such that reasonable persons can disagree, this court is constrained to issue a construction that preserves the validity of the claim" in accordance with "the still-applicable clear and convincing evidence standard." *Id.*

Accordingly, it would seem that "reasonable certainty" can properly mean that a claim must be upheld as valid if reasonable persons skilled in the art can disagree as to the construction of the disputed claim term. Thus, an analogy can be derived from Fed. R. Civ. P. 50 involving motions for judgments as a matter of law during trial. Under the Rule 50 standard, a judgment as a matter of law is granted only if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party opposing the motion. In applying this standard of "reasonable certainty," it becomes apparent – just as was the case in *In re Maxim Integrated Products, Inc.* – that this Court's finding of definiteness and validity under the old legal standard did not change post-*Nautilus* under the new "reasonable certainty" standard. *See also Cognex Corp. v. Microscan Systems, Inc.*, 2014 W.L. 2989975 at *7 n. 2 (S.D.N.Y. June 30, 2014) (prior finding of validity was unaffected by the *Nautilus* standard of "reasonable certainty.)

**IV.     The Disputed terms in the Patents-in-Suit, when viewed with the specification and prosecution history, inform a person skilled in the art with reasonable certainty of the invention**

Under the new standard of "reasonable certainty" as enunciated in *Nautilus*, this Court's prior ruling remains unchanged. It is significant that the party bearing the exacting burden of establishing invalidity by clear and convincing evidence (Wells Fargo) failed – even after the *Nautilus* decision – to proffer any evidence that one skilled in the art would fail to be informed as to the meaning of the disputed terms with "reasonable certainty."[1] This failure in itself mandates denial of Wells Fargo's Motion for Reconsideration.

---

[1] Post-*Nautilus*, courts seem more apt to accept testimony and declarations from experts skilled in the art as to the issue of indefiniteness. *E.g., Innovation Display Technologies, LLC v. Acer, Inc.*, 2014 WL 3402529 at *2 (E.D.

Moreover, application of the "reasonable certainty" standard to the disputed claim terms confirms this Court's prior ruling.

(a) '217 Patent "The Account"

Without repeating EPC's arguments in its original memorandum of law (Dkt. 65 – which EPC incorporates by reference), the Court's prior analysis reconfirms its finding of validity. Specifically, the Court found the "[a]t least some reason exists for one skilled in the art both to believe and to doubt that 'the account' means either 'the provider account' or the 'customer account' or 'another account' or 'the accounts." Order at 4 (Dkt. 95). If reason exists for one skilled in the art to believe that "the account" means "the customer account," then reasonable persons skilled in the art can so find and the mere fact that other reasonable persons skilled in the art might believe otherwise does not render this construction/meaning "unreasonable." Indeed, the standard of "reasonable certainty" cannot be a statistical analysis of whether most persons skilled in the art believe one definition over another. It simply requires that a reasonable person skilled in the art can understand the disputed term as proposed by the patentee, in a fashion supporting validity. This the court has already found; the *Nautilus* holding squares with this outcome.

Moreover, contrary to the Court's analysis at pages 4-5 of its Order (Dkt. 95), the inclusion of "data identifying … the customer" is not redundant with the meaning of "the account" as the "the customer account." The identification of the "customer" would include name, address, tax identification number, etc. while the identification of the "customer account" would identify the account number for the "customer account" and, perhaps the type of account

---

Tex. July 11, 2014); *Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*, 2014 WL 3362364 at *3 (D.N.J. July 9, 2014). However, Wells Fargo – the movant – failed to submit any expert declaration on this issue. Having failed to carry its burden, EPC need not submit a counter expert declaration. Should the Court determine that expert testimony is necessary on the issue of indefiniteness, EPC stands prepared to establish that a reasonable person skilled in the art would be informed as to the proposed meanings of the disputed terms with "reasonable certainty."

(checking, savings, etc.). Thus, no redundancy arises from construing the term: "the account" and "the customer account."

Further supporting this Court's prior ruling is its analysis at page 10 of its Order (Dkt. 95). There, this Court held:

> Although the entire patent is awkwardly drafted, the oppugned claim is simple. The specification is simple. The drawings are simple. The patent as a whole, notwithstanding the deficiencies, seems understandable; the claim seems understandable. In short, the indefiniteness of the term "the account" leaves no unmanageable gap in the information available for determining the scope of the claim. No practical incapacity or disabling uncertainty appears as a consequence of the fact that "the account" might mean one thing or the other.

(Dkt. At 10). Thus, if no "disabling" uncertainty ensues from the imprecision of the use of the term "the account," the term is – logically – understandable by one skilled in the art to a "reasonable certainty."

Read in context and with reliance on the specification history, "[a] reader of the patent [who is skilled in the art] – using the claim and the specification, the parts cited above and others – is able to adequately understand the contents of the data store and the claim as a whole." (Dkt. At 12). The conclusion adheres to the new standard enunciated in *Nautilus*. As to this term, Wells Fargo is not entitled to reconsideration.

(b) '217 Patent "Managed Institution"

Similarly, the Court's conclusion that "managed institution" is sufficiently definite and valid should remain unchanged after *Nautilus*. As thoroughly analyzed by this Court, "fairly and disinterestedly construed, the patent informs the reader [a person skilled in the art] that the

7

manager of the customer account, not the provider account (which the second embodiment never describes as either 'managed' or 'managing'), is the 'managed institution.'" (Dkt. At 15).

"Although the phrase 'the managed institution' is awkward, the claim and the specification permit an adequate understanding of the term and the claim." *Id.* Thus, one skilled in the art is informed of the meaning of the term with reasonable certainty. Wells Fargo is not entitled to reconsideration of this finding.

(c) '849 Patent "Total Rounder Amount"

Finally, this Court's finding that "total rounder amount" is not indefinite remains sound after *Nautilus*. The Court stated that "the issue is whether one skilled in the art could determine whether 'total rounder amount' means the sum of several rounder amounts or a single rounder amount calculated from the sum of several transaction amounts." (Dkt. at 15-16). As framed, the Court seems to have anticipated the "reasonable certainty" standard. The Court recognized that one skilled in the art would understand that "'[t]otal' modifies 'rounder amount' and persuasively implies that rounder amounts, not transaction amounts, are totaled (i.e. added)." (Dkt. At 16).

Wells Fargo has proffered no new evidence suggesting that a reasonable person skilled in art would fail to understand this meaning with "reasonable certainty." Wells Fargo has not carried its exacting burden of proof as to invalidity through indefiniteness. Reconsideration is unwarranted.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 4, 2014, the undersigned filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Charles M. Harris, Esq.
Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis
200 Central Avenue, Suite 1600
St. Petersburg, Florida 33701

Stephen Gardner, Esq.
E. Danielle T. Williams, Esq.
Michael T. Morlock, Esq.
Kilpatrick Townsend & Stockton LLP
101 West Fourth Street
Winston-Salem, NC  27101

Frederick L. Whitmer, Esq.
Kilpatrick, Townsend & Stockton, LLP
1114 Avenue of the Americas
The Grace Building
New York NY 10036

/s/ *Frank R. Jakes*
Frank R. Jakes, FBN 372226
Joseph J. Weissman, FBN 0041424
JOHNSON, POPE, BOKOR,
 RUPPEL & BURNS, LLP
403 E. Madison Street, 4th Floor
Tampa, FL  33602
(813) 225-2500
(813) 223-7118 (Fax)
E-Mail:  frankj@jpfirm.com
         josephw@jpfirm.com
TRIAL COUNSEL FOR PLAINTIFF

1904167